# JANUARY, 1911.

## Frank Wofford v. The State.

### No. 133.   Decided June 15, 1910.

Rehearing Denied January 4, 1911.

**1.—Rape—Evidence—Bill of Exceptions.**

Where, upon appeal from a conviction of rape, it appeared from the record that the question whether prosecutrix ever had carnal intercourse with any other man than defendant was asked and answered without objection, and then the court was asked to exclude it, and the ruling was withheld for authority on the subject, and when the authorities were produced the question and answer were withdrawn from the jury. Held, that it is not necessary to consider the question of admissibility of the testimony, as no error was committed.

**2.—Same—Remarks by Judge—Practice on Appeal.**

Where, upon appeal from a conviction of rape, it did not clearly appear from the record whether the objections to the remarks of the court were made at the proper time, there was no error; besides these remarks only amounted to a comment on a certain class of testimony and were not in themselves objectionable.

**3.—Same—Common Law Marriage—Evidence—Charge of Court.**

Where upon trial of rape, the defendant sought, as a defense, to prove a common law marriage between himself and the prosecutrix, but his evidence failed to show any mutual agreement between them to become husband and wife, there was no error in the court's failure to submit this issue to the jury.

**4.—Same—Sufficiency of the Evidence—Age of Prosecutrix.**

Where upon trial of rape, there was conflict of testimony as to the age of the prosecutrix, the same was a question of fact for the jury.

**5.—Same—Charge of Court—Words and Phrases.**

Where, upon trial of rape, witnesses and counsel referred to the prosecutrix as "the little girl," there was no error in the court's charge in which he referred to the prosecutrix as the little girl.

Appeal from the District Court of Sabine.  Tried below before the Hon. W. B. Powell.

Appeal from a conviction of rape; penalty, ten years imprisonment in the penitentiary.

The opinion states the case.

*J. B. Lewis* and *A. D. Hamilton* and *J. H. McGowan*, for appellant.—Upon the question that the court permitted the State's counsel to ask prosecutrix whether she had ever had carnal intercourse with anyone except defendant:  Dorsey v. State, 1 Texas Crim. App., 35; Jenkins v. State, id., 354; Mayo v. State, 7, Texas Crim. App., 342; Lawson v. State, 17 Texas Crim. App., 292; Pefferling v. State, 40

Texas, 491; Smith v. State, 73 S. W. Rep., 401; 4 Elliott on Evidence, sec. 3101 to 3105; 3 Greenleaf on Evidence, sec. 214.

On the question of common law marriage: Spear's Law of Married Women in Texas, page 16, sec. 19; Meister v. Bissell, 96 U. S., 76; Chapman v. Chapman, 88 Texas, 641; Cuneo v. De Cuneo, 24 Texas Civ. App., 436; Simmons v. Simmons, 39 S. W. Rep., 639; Holder v. State, 35 Texas Crim. Rep., 19; Hardy v. State, 37 Texas Crim. Rep., 55; Ingersol v. McWillie, 9 Texas Civ. App., 543.

On question of remarks by judge: Thompson v. State, 33 Texas Crim. Rep., 472; Stone v. State, 22 Texas Crim. App., 185; Parks v. State, 35 Texas Crim. Rep., 378; Tillery v. State, 24 Texas Crim. App., 251.

Upon question of withdrawing testimony from the jury: Railway Co. v. Levi, 59 Texas, 550; Shamburger v. State, 24 Texas Crim. App., 433; Musgrave v. State, 28 Texas Crim. App., 57; Bowen v. State, 47 Texas Crim. Rep., 137.

On question of the court's charge referring to prosecutrix as a little girl: Stuckey v. State, 7 Texas Crim. App., 174.

*John A. Mobley,* Assistant Attorney-General, for the State.

LOVE, SPECIAL JUDGE.—Appellant was convicted upon a charge of rape, by having carnal knowledge of a female under the age of fifteen years, and his punishment was fixed at ten years confinement in the penitentiary.

The prosecutrix is one Dubby O'Connell, who on and prior to the 13th day of March, 1909, as the facts show, lived with her mother in Calcasieu Parish, Louisiana. The evidence as to the age of prosecutrix is conflicting. The witness T. D. O'Connell testified that he was the father of prosecutrix, and had kept account of her age from year to year since her birth, and that she was just past fourteen years of age on the 13th of March, 1909. The mother testified that while she had lived and cohabited with said T. D. O'Connell for a number of years past, and had taught prosecutrix, as well as her two other children, to believe him to be their father and to regard and treat him as such and had given them his name, she had in fact never been married to him, and he was not the father of prosecutrix or of any of her children, and that prosecutrix was born on March 5, 1894, and consequently was just past fifteen years of age on March 13, 1909. Prosecutrix testified that on said 13th day of March, 1909, she voluntarily, but under the persuasion of appellant, who the facts show was then more than thirty-nine years of age, left her home in Louisiana with him, under his representation that they would come to Texas and get married, and that her mother did not know of her departure. The mother testified that she knew of and assented to the departure of her daughter with appellant, and gave him a

written order for a marriage license. Her testimony on this point being as follows:

"I went part of the way with them, when Frank Wofford left Louisiana with her. I certainly did consent for Frank Wofford to take this girl and she sure did consent to come. I give her up to Frank Wofford. I give him a written order and told him to get his license wherever he could. There was no way there to get a justice of the peace that I knew of. The defendant said he was going over to Texas for his license. I told him to go to Texas or anywhere he wanted. I wrote out a piece and give it to him and signed my name to it. . . . I sure heard her consent to come."

There is no other testimony of any kind in the record relative to the written order referred to by this witness, and she testified that she is unable to read, and an affidavit made by her before a notary public in Louisiana, which was introduced in evidence, shows that it was signed by her with her mark, indicating that she could not write. The facts show that when appellant and prosecutrix left her home on Saturday, March 13, they walked several miles, crossing the State line into Texas, and that they spent that night at a boarding or section house in Texas, occupying the same bed. The next day, Sunday, March 14, they traveled on foot and by rail together to the house of one John McGowan, a relative of appellant, located two miles west of Bronson, in Sabine County, Texas, where he introduced prosecutrix as his wife to McGowan and his wife, and where they spent that night, both occupying the same bed. They also spent the following night at McGowan's house, both again occupying the same bed, and on this night prosecutrix testified that appellant had sexual intercourse with her. They spent the night of the following day, Tuesday, March 16, at the home of Ed Horton, an acquaintance of appellant, located four miles west of Bronson, where appellant again introduced prosecutrix as his wife to Horton and his wife and daughter, and where again they occupied the same bed, and prosecutrix testified that on this night appellant again had sexual intercourse with her. On the night of the following day, Wednesday, March 17, appellant was arrested on this charge, at the home of Horton, after he had retired, and while he and prosecutrix were occupying the same bed. Dr. W. T. Arnold, a physician, testified that upon a physical examination of the person of prosecutrix, made about the last days of March, 1909, he found evidences that she had had sexual intercourse. N. C. Loggins, a witness for the defense, who had known appellant a number of years, and who saw him just prior to his arrest on Wednesday, March 17, 1909, at a sawmill in San Augustine County, testified as follows:

"The defendant at that time asked me to go to San Augustine and get him license for him to marry a young woman. I agreed to do it; that is, I agreed to go on the Saturday following. He told me where the young woman was. He said that she was at Ed Horton's.

He told me what her name was. He did not tell me that they were passing as man and wife then."

There is no reference in the testimony of this witness to any written order or other paper signed by the mother of prosecutrix.

This is believed to be a sufficient statement of the case to afford a basis for discussion of the questions raised.

1. While prosecutrix was testifying in the case as a witness for the State, the district attorney asked her the following question: "Did any other man except the defendant ever have carnal intercourse with you?" to which she replied, "No, sir." This question was asked and answered without any objection being interposed by appellant's counsel, though they immediately thereafter moved the court to strike both the question and answer from the record, and to instruct the jury not to consider the same, and offered, if the court so desired, to produce authorities showing the inadmissibility of the testimony. Appellant contends that reversible error was committed by the trial court with respect to its treatment of this testimony, which is claimed to be inadmissible on various grounds. The trial judge, in his explanation of the bill of exceptions upon this point, which was accepted by appellant, and therefore binding as to its recitals upon him as well as upon this court, says: "The question was asked and answered without objection, and then the court was asked to exclude it, and the ruling was withheld for authority on the subject, and when the authorities were produced, the question and answer was withdrawn from the jury, although it had gone in without objections." In view of this statement, we think that it is unnecessary to consider the question of the admissibility of the testimony referred to as no error was committed, whether it was admissible or inadmissible. The record shows that after it had been admitted without objection, it was held inadmissible, and the jury instructed to disregard it, every request of appellant respecting it being fully and reasonably complied with by the trial court.

2. When the motion was made by appellant's counsel that the question which was propounded by the district attorney to prosecutrix, and her answer thereto, as hereinbefore referred to, be stricken from the record, and that the jury be instructed to disregard the same, the record shows that the trial judge made in the presence and hearing of the jury the following statement: "I do not know what the law is on that point, but I think it ought to be the law, that whether or not the alleged injured party has had carnal intercourse with other men in cases like this ought to be admitted in evidence by way of mitigation or aggravation of the crime and the punishment. The question may not be admissible under the law, but it ought to be. It is in now. Produce your authorities, and if that is the law I will strike it out later."

The bill of exceptions covering this point, immediately after a quotation of the remarks of the judge, recites as follows:    "These

authorities were produced later, and thirty hours after said testimony was admitted the jury were instructed not to consider the same, to all of which remarks and actions of the court defendant then and there objected and excepted," etc. From this recital it does not clearly appear whether the objections to the remarks of the court were made at the time the remarks were made, or thirty hours thereafter at the time the court excluded the testimony complained of from the consideration of the jury, and it nowhere appears in the record that appellant's counsel at any time moved or requested the court to instruct the jury to disregard the remarks complained of.

Appellant assigns error upon these remarks of the trial judge upon the ground that they constituted a charge or comment upon the weight or value of the testimony and an expression of the opinion of the court as to the guilt or innocence of the accused. We do not so construe the remarks complained of. At most they amounted only to a comment or expression of opinion as to the admissibility, as a matter of law, of a class of testimony in a class of cases, and the purpose for or grounds upon which such testimony might be admissible in such cases. The court expressly stated that "the question (which had already been asked and answered without objection) may not be admissible under the law, but it ought to be. It is in now. Produce your authorities, and if that is the law I will strike it out later." Authorities were produced and the evidence complained of was stricken out and the jury instructed to disregard it. In the light of the record, we are not of the opinion that the remarks complained of constitute reversible error.

3. Appellant assigns as error the refusal of the trial court to submit to the jury the issue as to whether or not prosecutrix was his wife at the time of the alleged rape under the facts of the case, by virtue of a common law marriage. This phase of the case has been presented and argued with marked ingenuity and ability by appellant's counsel in brief and oral argument, and we think it proper in our discussion of it to collate and present all the testimony to be found in the record which can possibly be conceived to tend to prove or to remotely suggest a common law marriage between prosecutrix and appellant. Prosecutrix, who must have known better than any other witness, any facts tending to establish a common law marriage, testified as follows:

"I was not the wife of Mr. Wofford, nor I never have been his wife and I am not his wife now. Frank Wofford persuaded me off. I did not want to come, but he got me to come. He told me he would marry me if I would come and he never done it. . . . I was dissatisfied with being with Frank Wofford before he was arrested. I wanted all the time to get back home. . . . Frank Wofford did not tell me at any time from the time I left Louisiana until I got to Texas when we would be married. He said that we would be married as soon as he could arrange for the marriage. . . .

When we got to John McGowan's, Frank Wofford introduced me as his wife to old man John McGowan. I objected to that. I did not say anything, only I shook hands with John McGowan. I didn't object to it in John McGowan's presence. I never told John McGowan I wasn't his wife, nor I didn't tell anyone I wasn't his wife. He introduced me to them as his wife. I didn't tell anyone any different when I staid there that night. I don't know whether Frank told Mr. Horton I was his wife or not. I think I told Mr. Horton's wife that I was his wife. I didn't tell them any different. Don't remember of telling them any different. I don't think that I did. . . . I didn't tell any of the three persons (Horton or his wife or daughter) that I wasn't Frank's wife. I was passing as his wife then. I was still at that time expecting Frank to marry me. . . . When we got to Mr. McGowan's he introduced me as his wife and the same way at Mr. Horton's. . . . He told them I was his wife, and I didn't raise any objection to it."

J. F. McGowan testified that appellant and prosecutrix spent two nights at his house, being the Sunday night and Monday night prior to appellant's arrest; that he introduced her to him as his wife and that they both occupied the same bed, and said, "And she did not tell me or anyone else that I know of that she was not his wife."

Ed Horton, after testifying that appellant met him in the road near his house on Tuesday prior to his arrest on Wednesday, further testified as follows: "He had a girl with him at the time and told me she was his wife. . . . He did not nor the girl did not tell me any different from that before he was arrested."

Mrs. Ed Horton testified as follows: "He had a little girl with him and he said it was his wife. She said that she never saw anyone married in her life, and did not know whether they were married or not. She said that Frank told her they were married. I understand from her statement and his statement that they were married."

The testimony of the mother of prosecutrix and of the witness N. C. Loggins, which is quoted elsewhere in this opinion, taken together with that of prosecutrix and of the witnesses McGowan, Horton and Mrs. Horton here quoted, constitute all the testimony contained in the record which could possibly be held to affect the question of a common law marriage. It must be held that that issue is raised by these facts, if it is in the case. The primary essential element of a common law marriage contract, as recognized by the courts of this State, is a mutual "agreement of the man and the woman to become then and thenceforth husband and wife." See Simmons v. Simmons, 39 S. W. Rep., 649, and cases therein cited. We are of the opinion that the record in this case fails utterly to disclose any evidence tending to show such an agreement. It is contended by appellant that under the law the evidence showing cohabitation between a man and a woman, following their agreement or engagement to marry at some future time, raises a presumption of their consent to become

husband and wife, and the courts have held in some civil cases in this State that such a presumption is so raised in the absence of any rebutting testimony. We think that any such presumption in this case was conclusively rebutted by the testimony of the very witness by whom the cohabitation was proven, but if this were not the case, we are of the opinion that such a presumption can not avail the defendant upon trial on a criminal charge in a case of this character, in view of the provisions of the Penal Code, which makes it a felony for a person "by promise to marry" to seduce and have carnal knowledge of an unmarried female under the age of twenty-five years, and which further provide that in such case "if the parties marry each other at any time before the conviction of the defendant, or if the defendant in good faith offer to marry the female so seduced, no prosecution shall take place, or, if begun, it shall be dismissed," etc. See articles 967, 968 and 969, Penal Code. As we read this record the facts upon which appellant relies to raise in his favor a presumption of his marriage to prosecutrix would, if she had been over the age of fifteen years, have supported his conviction of seduction, which the law provides could only have been avoided by his marriage to her.

We are of the opinion that the trial court correctly refused to submit to the jury the issue of common law marriage in this case, as we do not believe that issue is raised by the facts. To hold otherwise would be to put the sacred badge of matrimony upon any wicked liaison induced by a promise to marry, and to scandalize the cherished sanctity, innocence and honor of the marriage vows.

We have considered the other assignments of error presented and are of the opinion that none of them warrant a reversal of the case.

The conflict in the testimony as to the age of the prosecutrix was decided by the jury adversely to appellant and the elimination of this issue would seem to leave no doubt of appellant's guilt under the law as applied to the undisputed facts.

The judgment is affirmed.

*Affirmed.*

Davidson, Presiding Judge, concurs.
Ramsey, Judge, concurs.

ON REHEARING.

January 4, 1911.

LOVE, Special Judge.—In appellant's motion for rehearing considerable stress is laid upon the fact that in the opinion heretofore rendered affirming this case, the assignment of error upon the portion of the trial court's charge in which he referred to the prosecutrix as "the little girl," was not treated or discussed. In our opinion this language in the court's charge would not in any event constitute reversible error in this case, for the reason that the record discloses that at least one witness placed upon the stand by the defendant

referred to the prosecutrix as "the little girl," and that she was also referred to as "the little girl" by appellant's attorney in questions propounded by him in the examination of witnesses in the presence of the jury. We, therefore, think that appellant can not complain of this language of the court as error in this case, and we deem it unnecessary to discuss the other matters presented by the motion for rehearing in view of our former opinion affirming the case.

The motion for rehearing is overruled.

*Overruled.*