## JIM FOX v. THE STATE.

### No. 1930. Decided March 12, 1913.

### Rehearing denied June 25, 1913.

**1.—Murder—Continuance—Immaterial Testimony.**

Where defendant's application did not show the materiality of the alleged absent testimony, with reference to an alibi of a party whom the State did not claim was at the homicide, there was no error in overruling same.

**2.—Same—Bill of Exceptions.**

Where the court below states that the allegations of the bill of exceptions are wholly incorrect, the matter presents no error.

**3.—Same—Evidence—Insult to Female Relative.**

Where, upon a trial of murder and conviction of manslaughter, the defendant claimed insult to his wife by the deceased, there was no error in permitting the State to show that the general reputation of defendant's wife for virtue and chastity was bad in the community in which he lived. Art. 1134, Penal Code.

**4.—Same—Evidence—General Reputation.**

Where defendant's witnesses testified that his reputation for truth and veracity was good and that they had never heard his reputation questioned, there was no error in permitting the State to show that defendant's veracity was questioned by witnesses in a certain damage suit.

**5.—Same—Evidence—Leading Questions.**

While the State should not have been permitted to ask leading questions, yet where the evidence was, nevertheless, admissible and was not very material, the matter presents no reversible error.

**6.—Same—Evidence—Ill-will of Deceased.**

Where defendant testified that deceased, while deputy sheriff, had refused to approve a certain bond, which defendant presented to him, to show the ill-will of deceased, there was no error to permit the State, on cross-examination, to show that deceased refused to receive the bond because it was insufficient.

**7.—Same—Charge of Court—Going Armed—Explanation.**

Where, upon trial of murder, there was testimony that the deceased had made insulting remarks about defendant's wife; that thereupon, defendant armed himself and went in search of deceased to demand an explanation of him; that the latter gave him no opportunity, but reached for his pistol, when defendant shot and killed him, there was no error in the court's failure to submit this matter to the jury, the court having given a full and fair charge on self-defense without any limitation. Following Williford v. State, 38 Texas Crim Rep., 303, and other cases.

**8.—Same—Charge as a Whole—Self-defense—Serious Bodily Injury.**

Where, upon trial of murder and a conviction of manslaughter, the court gave a full and fair charge on self-defense, when considered as a whole, criticisms of phrases in the charge, and that the court omitted to present serious bodily injury as a ground of self-defense, were untenable, and there was no error.

**9.—Same—Presumption—Deadly Weapon.**

Where the defendant testified that deceased not only reached for his pistol, but got it and dropped it, the court did not err in charging on presumption arising from the use of a weapon.

**10.—Same—Sufficiency of the Evidence.**

Where, upon a trial of murder and a conviction of manslaughter, the evidence sustained the conviction, under a proper charge of the court, there was no error.

Appeal from the District Court of Hill. Tried below before the Hon. C. M. Smithdeal.

Appeal from a conviction of manslaughter; penalty, five years imprisonment in the penitentiary.

The opinion states the case.

. *C. F. Greenwood* and *Morrow & Morrow,* for appellant.—On question of defendant's right to arm himself to seek an explanation and court's failure to charge thereon: McCleary v. State, 57 Texas Crim. Rep., 139; Shannon v. State, 35 id., 2.

*C. E. Lane,* Assistant Attorney-General, and *Wear & Frazier,* for the State.—On question of defendant's right to go armed and ask explanation: Harreldson v. State, 60 Texas Crim. Rep., 534, 132 S. W. Rep., 783, and cases cited in opinion.

HARPER, JUDGE.—Appellant, under an indictment charging him with murder, was convicted of manslaughter, and his punishment assessed at five years confinement in the State penitentiary.

Appellant complains of the action of the court in overruling his application for a continuance on account of the absence of Mrs. N. B. Sturdevant, by whom he stated he expected to prove that on the night Mr. Glasgow was killed she was unwell and called Dr. Menafee between 12:30 and 1 o'clock that night and he was at home. If the killing had taken place at or near that hour, under the allegations, this evidence might be material, considering the arguments made in the case, but as it is shown that the homicide took place between 3 and 3:30 o'clock in

the morning, the testimony of Mrs. Sturdevant would not tend to show Dr. Menafee's whereabouts at the latter hour, and as his residence was but a short distance from the homicide, and he could easily, if he had desired to do so, have left his home as late as 2:30 o'clock and arrived at the scene of the homicide before it took place, there was no error in overruling the application for continuance. Nor in refusing the special charges requested in regard to this matter. It was perfectly legitimate for the State's attorneys to argue, under the evidence in this case, that in their opinion the deceased was waylaid, and more than one person participated in the killing, and the testimony of Mrs. Sturdevant as to the whereabouts of Dr. Menafee, two hours prior to the homicide, would not and could not have been material on that issue. Had the absent witness proposed to testify that she knew his whereabouts from 3 to 3:30 o'clock, it might be material, but as she does not pretend to know his whereabouts after 1 o'clock the evidence would be wholly immaterial.

The second bill of exception, as approved by the court, presents no error, as the court states the allegations of the bill are wholly incorrect.

The State offered testimony going to show that the general reputation of the wife of defendant for virtue and chastity in the community where she lived was bad. This evidence was objected to on the ground, "because such testimony was not in harmony with the statute on the subject, and, therefore, illegal and improper." The statute referred to, we gather, is the one that reduces an unlawful homicide to the grade of manslaughter when the killing occurs on account of imputing a want of chastity towards a female relative. Appellant testified that he had that night been informed that deceased had been reporting to others that "he had pulled Ted Robinson out of the bed with defendant's wife," and on this and similar remarks he sought to reduce the offense to manslaughter, if he was not justified in slaying deceased. This would be adequate cause, but in addition to adequate cause, it must be shown that anger, or rage, was occasioned by such a remark, and it was held by this court in Redman v. State, 52 Texas Crim. Rep., 591: "It is unnecessary to cite authorities to support the proposition that the character of a female may be proved as a circumstance to throw light upon whether the appellant believed the language slanderous. Certainly, it could not be seriously contended that, if Kittie Caruth had given birth to a child, being an unmarried female, deceased had stated this fact to a party who informed appellant, her first cousin, and appellant knew the fact to be true, and he had sought out deceased and killed him, these facts alone would not reduce the killing below murder. We are not here discussing the question as to the lack of belief on the part of appellant of the truth of the statement, but to our mind it is absurd to say that one can claim that he killed a party for insult concerning a female relative, when said party knows the language used about said female is true. It is not slander or insult to a female relative in contemplation of the statutes that authorizes the reduction of the homicide to manslaughter where the appel-

lant knows the statement upon which he acts to be true." We are not passing on the question of whether or not appellant's wife was a virtuous woman, but if her general reputation in the community where she lived was that of an unchaste woman, the fact that someone had stated that she was not chaste, would not be likely to cause that passion which would reduce the offense to manslaughter, and the evidence was admissible to aid the jury in passing on whether the remark did cause anger, or rage, to such an extent as to render appellant's mind incapable of cool reflection.

Witnesses testified that they knew appellant and knew his reputation for truth and veracity to be good. On cross-examination they stated they had never heard his reputation in this respect questioned, and for this reason judged it to be good, when the State was permitted to show that these witnesses had heard that appellant had testified in a trial that he was on a certain train and witnessed a certain accident; that three men who were on the train swore that appellant was not on this train. This was a legitimate cross-examination, the witness having stated he had never heard his veracity questioned.

T. H. Jackson was a witness for defendant, and on cross-examination some leading questions were asked the witness on matters not elicited by defendant, when State's counsel sought to develop by the witness evidence in support of the State's case. The State should not have been permitted to ask leading questions in this instance, but as the evidence adduced was admissible, and was not of a very material character, it is not such an error as would call for a reversal of the case. The defense had Mr. Jackson to testify that a person who stood near the church, where it was claimed powder marks were found, could not fire a gun and hit a post in which bullets were found embedded. On cross-examination he testified: "Q. It is not infrequent, is it, Mr. Jackson, in shooting a shotgun for the course of some stray bullet, so to speak, to take an angle or course that is unaccounted for? A. I think not. My experience has always been that there are usually several stray shots that go a considerable distance from the main body of the shot. Q. And get a further distance, the further out the line they go? A. Yes, sir." This was legitimate cross-examination, and the court did not err in admitting the testimony.

The defendant, while testifying, had stated that he, at Mrs. Dean's request, had signed a bond for her son and secured the signatures of two other persons; that he had presented it to deceased, who was then deputy sheriff, for approval, and that deceased had refused to approve it,—at the time using abusive epithets in regard to appellant, and introduced this testimony to show the ill-will of deceased toward appellant. On cross-examination the State was permitted to show by the witness that the persons whose signatures appeared on the bond owned no property subject to execution, and that this occurred prior to appellant receiving the money he did receive from a railroad on account of a damage

Vol. 71 Crim.-21.

suit.  If appellant sought to show the ill-will of deceased towards him
by reason of the fact that deceased refused to approve this bond, it seems
to us permissible for the State to show that those who signed the bond
had no property subject to execution, and present their theory that this
was perhaps the reason deceased refused to approve the bond.

The evidence would show, and defendant testified, that he was in-
formed on the night of the fatal encounter that deceased had said he
(deceased) had pulled Ted Robinson out of defendant's wife's bed; that
he then went and bought shells, got his gun and went in search of de-
ceased.  He further testified that he was hunting for him to demand
an explanation of the remark; if, when he approached deceased he had
given an explanation he would not have killed him; but, when he
approached deceased, deceased gave him no opportunity to ask for and
demand an explanation, but reached for his pistol when he, appellant,
shot and killed him.  Appellant asked the court to instruct the jury
that if appellant was so informed, and did arm himself and go in search
of deceased with the intention of demanding an explanation or retrac-
tion of the remarks, such action would not deprive him of his right of
self-defense.  This is undoubtedly the law in this State, but where the
court gives a full and fair charge on self-defense, without any limita-
tion, is it required to give such a charge as was requested?  If the court
had charged on provoking a difficulty, or presented imperfect self-
defense, or in any way restricted or limited appellant's right against
real or apparent danger, this charge should perhaps have been given.
But inasmuch as the court instructed the jury that, viewing the circum-
stances from appellant's standpoint, if it reasonably appeared to him
that he was in danger of losing his life, or suffering serious bodily injury,
he should be acquitted, it was unnecessary to give this additional charge.
In the case of Williford v. State, 38 Texas Crim. Rep., 393, this court
held that on a trial for murder, where the court gave a full charge upon
the law of self-defense, unlimited and unabridged by any other charge,
it is not reversible error to refuse an instruction asked by defendant,
upon the theory of his right to arm himself and seek deceased to demand
an explanation.  In the Shannon case, 35 Texas Crim. Rep., 2, cited
by appellant, it is held that where the issue of who provoked the diffi-
culty is raised, this character of charge should have been given.  In the
Newman case, 69 S. W. Rep., 519, cited by appellant, it is also said
that the court should have submitted the issue of provoking the difficulty,
and the converse of that proposition, and in so doing should have in-
structed the jury that if Newman did not provoke the difficulty, the
fact that he had armed himself would not abridge his perfect right of
self-defense.  The other cases cited by appellant but reiterate this rule
of law and that is, that if the court submits the issue of provoking the
difficulty, or in any way limits appellant's right of self-defense, then
it would be error to refuse to so charge at appellant's request, but in
the event the court submits the issue of self-defense, without any limita-
tion being placed thereon, and aptly applies the law to the facts in the

case, the failure to so charge presents no error. The court on the issue of self-defense instructed the jury:

"Every person is permitted by law to defend himself against any unlawful attack reasonably threatening injury to his person, and is justified in using all necessary and reasonable force to defend himself. You are further instructed that a reasonable apprehension of death or serious bodily harm will excuse a party in using all necessary means to protect his life or person, and it is not necessary that there should be actual danger, provided he acted upon a reasonable apprehension of danger as it appeared to him from his standpoint at the time, and in such case the party acting upon such apparent danger is in no event bound to retreat in order to avoid the necessity of killing his assailant, and a killing under such circumstances would not be an unlawful killing. If, therefore, you believe that the defendant killed the deceased, Frank Glascow, but further believe that at the time of so doing the deceased by his acts and conduct, or either, caused the defendant to have a reasonable expectation or fear of death or serious bodily injury, and that acting under such reasonable expectation or fear of death or injury, the defendant killed the deceased, or if you have a reasonable doubt as to said matters, then you should acquit him and so say by your verdict. And in this connection you are charged that it is not necessary that there should be any real danger in order to entitle the defendant to a verdict of not guilty, but it is only necessary that viewing the matter from his standpoint, and from his standpoint alone, the acts and conduct, or either, of the deceased at the time caused the defendant to have a reasonable expectation or fear of death or serious bodily injury, and that the defendant acted at the time under such reasonable expectation or fear.

"When a homicide takes place to prevent murder or other bodily injury, if the weapon or means used by the party attempting or committing such murder or other bodily injury are such as would have been calculated to produce that result, it is to be presumed that the person so using them designed to inflict the injury. Therefore, if the deceased made an attack upon defendant with a pistol at or just before the time defendant shot the deceased, if he did shoot him, it will be presumed that the deceased intended to injure the defendant.

"When a defendant is accused of and is on trial for murder and seeks to justify himself on the ground of threats against the defendant, the law permits him to introduce evidence of threats made, but also provides that same shall not be regarded as affording a justification for the offense unless it be shown that at the time of the homicide the deceased did by some act then done manifest an intention to execute the threat so made. As to whether the defendant had reasonable grounds to fear an attack by the deceased, or reasonable grounds to fear that he was in danger of death or of suffering serious bodily injury, or of fearing or believing that the deceased was about to execute a threat involving as a probable result the infliction of serious bodily harm, the facts and cir-

cumstances attending the difficulty and the situation of the parties must be looked at and the question determined from the standpoint of the defendant alone. In this connection you are charged that if you believe from the evidence that the deceased, Frank Glascow, had threatened to kill the defendant, or do him serious bodily harm (and as to whether he had done so is a question for you to determine) and that at the time the defendant shot the deceased, if he did, the said deceased by his acts and conduct, or either, manifested an intention to put the threats so made, if any were made, into execution, and that the defendant believed, or had reason to believe, that the deceased was about to put such threat into execution, or if you have a reasonable doubt as to said matters, then you will acquit the defendant."

The issue of self-defense was made by the testimony of defendant, and he says that as he approached deceased and spoke to him that deceased reached for a pistol, and he heard it drop on the ground, and at this time he fired and killed him. He also testified as to threats that had been communicated to him and under this evidence, we think, the charge above quoted fully presented every issue raised by the testimony. To select one sentence in the charge, and complain in one instance that the court limited the right to defend to an actual attack, is hardly presenting the matter fairly, for if we read the charge as a whole, no such construction could be given to the charge on self-defense. In another instance it is claimed that the charge limited the right to defend to a "fear or expectation of death," when the law allows one to act as well from a fear of serious bodily injury. Again, we would say if you would pick out one isolated sentence, the charge might be subject to this criticism, but as a whole it aptly and correctly tells the jury that in order to justify defendant in killing deceased it "was only necessary, viewing the matter from his standpoint, that the acts and conduct of deceased, or either of them, caused him to have a reasonable expectation or fear of death or serious bodily injury."

As defendant testified deceased not only reached for his pistol but got it and dropped it, the court did not err in charging on presumption from the use of a weapon, and the charge is drawn in such a way that no jury could have been misled.

The other complaints of the charge are, we think, also without merit and present no matter which would call for a reversal of the case. In some instances it may have been inaptly worded, but it presents the law in a way that fairly presented each issue to the jury for their determination.

Those complaints in the motion in regard to the organization of the jury can not be reviewed, as no bill of exceptions was reserved. Judgment affirmed.

*Affirmed.*

## ON REHEARING.

### June 25, 1913.

HARPER, JUDGE.—Appellant insists that the court was in error in holding that the trial court did not err in overruling the application for a continuance. Let's see the facts he states he expects to prove by this witness. The application states "that all the testimony will show that the killing took place between 3:20 and 3:30 o'clock; that Mrs. N. B. Sturdevant called Dr. Menafee between 12 and 1 o'clock that night, and he was at home at that hour." If she should so testify this would not tend to show where he was at 3:20 o'clock, and as the place where deceased was killed was only a short distance from Dr. Menafee's residence he could have been at home at 1 o'clock and at the scene of the killing at 3 o'clock. However, the State offered no testimony that Dr. Menafee was present at the scene of the killing.

It is contended that the court in his charge limited appellant's right of self-defense to an "actual attack." The charge is copied in the original opinion and by reading it it will be seen that this contention is without merit, and under such circumstances the authorities cited by appellant have no application. If in fact the charge had so limited appellant's right, then his contention could be of weight.

All the other questions raised were fully discussed in the original opinion, and we do not deem it necessary to do so again. However, we will add that when a person on trial relies on insult to his female relative to reduce an offense to manslaughter, it is statutory that the State may put in evidence proof of the general character of the female alleged to have been insulted. Art. 1134, Penal Code.

The motion for rehearing is overruled.

*Overruled.*