ANDREW CYRUS V. THE STATE.

No. 3198.　Decided June 26, 1914.

Rehearing denied October 14, 1914.

**1.—Assault to Murder—Evidence—Immaterial Testimony.**

Where the alleged refused testimony shed no light on the transaction for which defendant was on trial, there was no error.

**2.—Same—Self-serving Declarations.**

Upon trial of assault to murder, there was no error in excluding the self-serving declarations of the defendant to third parties, the same not being res gestae; and the fact that he had been warned when the alleged statements were made would not make it admissible.

**3.—Same—Evidence—Contradicting Witness.**

It is always permissible, either for the State or for the defendant, to show that a witness had made a different statement from that to which he testified on the trial on a material matter. Following Campos v. State, 50 Texas Crim. Rep., 289.

**4.—Same—Newly Discovered Evidence.**

Where the alleged newly discovered testimony would not tend to discredit the testimony of the State or detract therefrom, but rather to strengthen it, there was no error in overruling a motion for new trial on that ground.

**5.—Same—Regular Order—Calling Cases.**

In the absence of a bill of exceptions, the complaint in the motion for new trial that defendant's case was called out of its regular order can not be considered on appeal; besides, it was not so called.

Appeal from the District Court of Freestone.　Tried below before the Hon. H. B. Daviss.

Appeal from a conviction of assault with intent to murder; penalty, six years imprisonment in the penitentiary.

The opinion states the case.

*W. J. Bryant,* for appellant.

*C. E. Lane,* Assistant Attorney General, for the State.

HARPER, JUDGE.—Appellant was convicted of assault to murder, and his punishment assessed at six years confinement in the State penitentiary.

The State's evidence would show that appellant and his wife were visiting at the residence of her mother, Roxy Gaines. That Roxy Gaines and her daughter, appellant's wife, desired to go and see a kinsman, May Eliza Bonner, who was sick, and appellant objected to his wife going. Words ensued, when the woman learned appellant was armed with a pistol, and Roxy Gaines asked some of those present to go after Lee Lamb. They did not go and Roxy Gaines went in the house and got a gun, but finding it had no loads in it, laid it down on the gallery. As she did so appellant began to shoot at her and killed her. He then turned and shot at his wife, who fled; appellant pursued her and when he caught her he shot her in the neck, and as she fell he ran off.

Appellant's contention is that he and his wife had started to leave Roxy Gaines' house to go home, when Roxy told his wife (her daughter) she need not go; that from this words ensued, when Roxy rushed in the house, got a gun and shot at him, knocking his hat off. That he then shot her, and after he shot Roxy, his wife and Roxy's son grabbed him, and in the scuffle the pistol went off two or three times, and if he shot his wife it was accidental, and he did not know he had done so until the next day. This is a sufficient synopsis of the testimony to discuss the various bills presented in the record.

In the first bill it is shown that while Louise Cyrus was testifying for the State, on cross-examination, appellant asked her: "Did you send to Andrew Cyrus (appellant) for some clothes for yourself and baby?" which question was objected to by the State, and the objection sustained by the court. The bill and the qualification of the court show that if she sent to appellant for any clothes it was many months after the homicide, and after the alleged assault on Louise. Under such circumstances the bill presents no error, as it would shed no light on the transaction for which he was on trial.

There are several bills in the record in which it is shown that appellant directly and indirectly sought to introduce in evidence what he told Deputy Sheriff Wright and Constable Crouch about how the difficulty arose. There is no suggestion that such conversation was res gestae of the transaction; in fact, the record shows affirmatively it was not, and under such circumstances his self-serving declarations were properly excluded by the court as well as the reply of defendant on the day after the killing when Deputy Sheriff Wright told him about his shooting his wife. As stated by the court in approving these bills, appellant had had many hours for reflection and ample opportunity to plan and conceive these self-serving declarations, and under such circumstances there was no error in the ruling of the court. The fact that he had been warned that what he said might be used against him would not render such statement admissible in his behalf when the State had not elicited nor sought to elicit any part of such statements. Walker v. State, 13 Texas Crim. App., 618; Wharton's Crim. Law, sec. 1425, 10th ed.

Randolph Murray was a witness for the defendant, and had testified

to material facts in his behalf; had denied that appellant ran his wife around the house, and there shot her, and had testified to facts supporting appellant's contention that the shooting of his wife was accidental. Under such circumstances it was permissible for the State on cross-examination to ask if he had not on the day of the shooting told Lee Lamb and George Ferrell "that appellant chased his wife around the house, shot at her, and ran and jumped the fence, and then turned and shot again," and when he denied having so stated, it was also permissible for Lee Lamb and George Ferrell to testify that Randolph Murray had so told them. . It is always permissible, as tending to impeach a witness, either for the State or defendant, to show that they had made different statements from what they testified on the trial on a material matter. Campos v. State, 50 Texas Crim. Rep., 289, and cases cited in section 871, Branch's Crim. Law.

The alleged newly discovered testimony of Ira B. Smith would not tend to discredit the testimony of Horace Womack. He does not claim to have been with Womack at the time the shooting took place, but says in the affidavit he (Smith) was in Lee Lamb's house, and, therefore, he could not and does not claim to know where Womack was at that time. The fact that Womack did not tell him what he saw of the shooting when he saw him after the shooting, would in no way tend to discredit Womack. And neither is the testimony of Dr. Milner contradictory of any testimony had on the trial, but such testimony would show that appellant's wife was shot on that Sunday as she says she was, and would tend strongly to contradict the testimony of the defendant that the shooting was accidental, instead of supporting his theory of the case. The doctor says he was called to see the woman, and she was shot in the side of the neck one and one-half or two inches from the median line on the center of side of neck; that it struck a bone and came out in the back of the neck and a little to one side of the center of the neck. Louise Cyrus testified that appellant ran her and "caught her by the collar and put the pistol down my neck and fired," and she fell. There would be contradiction in this testimony, and while some of the witnesses may have used the expression that appellant shot his wife in the back of the neck, when the ball is shown to have entered at least one and one-half inches from the center of the side of the neck, this would not be conflicting. Many, in describing a wound, would thus speak of it, when it was that far to the rear. The testimony of the doctor would add no strength to the testimony of the defendant, nor detract any from the testimony offered by the State, but on the other hand would tend to strengthen the State's testimony, and the court did not err in refusing to grant a new trial on account of this alleged newly discovered testimony.

In the motion for new trial it is alleged that this case was called out of its regular order. If so, no bill of exceptions was reserved to such action; therefore, it is not presented in a way we can review it. In overruling the motion for a new trial, the court appends a statement

as to this matter, and shows conclusively it was not called out of its regular order.

Finding no error in the record the judgment is affirmed.

*Affirmed.*

[Rehearing denied October 14, 1914.—Reporter.]