## Alfred Smith v. The State.

### No. 4414.   Decided May 23, 1917.

**1.—Murder—Evidence—Conclusion of Witness—Self-defense—Specific Acts of Violence.**

Where, upon trial of murder, specific acts of violence of the deceased, of which defendant was informed prior to the homicide, were introduced in evidence and was hardly a disputed issue in the case, there was no error on the part of the court in excluding testimony that some eight years before the trial, and shortly prior to the time that the wife of the deceased gave birth to a child, the deceased beat and inflicted serious injury upon said wife, and that as a result thereof said child was prematurely born and was a lunatic from birth, as this latter was opinion evidence, and the rest was only admissible if defendant was informed of the acts of the deceased. Following Hysaw v. State, 69 Texas Crim. Rep., 562, and other cases.

**2.—Same—Evidence—General Reputation.**

Where, upon trial of murder, there was no issue made by the defendant as to the reputation of deceased for 'honesty, etc., but the question was his reputation as a man of peace, quietude and order, there was no error in excluding testimony that the deceased had at one time been convicted of theft, and thereafter pardoned; under the facts of the instant case.

**3.—Same—Evidence—Self-serving Declaration—Res Gestae.**

Where, upon trial of murder, the proffered declarations of defendant were too remote in time after the homicide to be admissible as res gestae, and was a self-serving declaration, which could not throw any light on the case, there was no error in excluding it. Following Deneaner v. State, 58 Texas Crim. Rep., 624, and other cases.

**4.—Same—Remarks by Court—Harmless Error—Bill of Exceptions.**

Where remarks of the trial court that the defendant's declarations were self-serving, etc., were not prejudicial to the rights of the defendant, the same

were harmless error. Following Pilgrim v. State, 59 Texas Crim. Rep., 231, and other cases. Besides the bill did not state that the remark of the judge was made in the presence and hearing of the jury, but even if it had, it was not reversible error.

**5.—Same—Defendant's Right to Arm Himself—Charge of Court—Perfect Right to Self-defense.**

Where, upon trial of murder, the trial court's charge gave the defendant the perfect right of self-defense, unabridged by any charge of provoking the difficulty, there was no error in refusing a requested charge informing the jury of defendant's right to arm himself and seek the deceased for an explanation. Following Williford v. State, 38 Texas Crim. Rep., 393. Distinguishing Shannon v. State, 35 Texas Crim. Rep., 2.

**6.—Same—Rule Stated—Self-defense—Charge of Court.**

A charge on the right of defendant to arm himself and seek the deceased for an explanation is required only in those cases in which the court has failed to give the defendant a charge awarding him the perfect right of self-defense. Following Harrellson v. State, 60 Texas Crim. Rep., 534, and other cases.

**7.—Same—Evidence—Other Evidence of Same Character—Rule Stated.**

Where, upon trial of murder, it appeared on appeal that substantially the same testimony as that complained of in the bill of exceptions was in evidence from other sources without objection, there was no reversible error. Following Waggner v. State, 53 Texas Crim. Rep., 306, and other cases.

Appeal from the District Court of Clay. Tried below before the Hon. Wm. N. Bonner.

Appeal from a conviction of murder; penalty, six years imprisonment in the penitentiary.

The opinion states the case.

*Taylor, Allen & Taylor* and *Wantland & Parrish,* for appellant.—On question of right of going armed, etc.: McPeak v. State, 187 S. W. Rep., 754, and cases cited in opinion.

On question of remarks of court: Simmons v. State, 55 Texas Crim. Rep., 441; McMahan v. State, 61 Texas Crim. Rep., 489, 135 S. W. Rep., 558; Scott v. State, 72 Texas Crim. Rep., 26, 160 S. W. Rep., 960.

On question of res gestae: Craig v. State, 30 Texas Crim. App., 619; Clark v. State, 56 Texas Crim. Rep., 293; Wakefield v. State, 50 id., 124; Craven v. State, 49 id., 78; Thomas v. State, 47 id., 534; Gray v. State, 47 id., 375; Freeman v. State, 40 id., 545; Castillo v. State, 31 id., 145.

On question of character of deceased and specific acts of violence: Pore v. State, 67 S. W. Rep., 501; Spencer v. State, 59 Texas Crim. Rep., 217; Smith v. State, 67 id., 27; Spangler v. State, 41 id., 424.

*E. B. Hendricks,* Assistant Attorney General, for the State.—On question of opinion of witness and specific acts: Phillips v. State, 22 Texas Crim. App., 139.

On question of motive: Tomlin v. State, 25 Texas Crim. App., 676; Woodward v. State, 42 Texas Crim. Rep., 188; McAnear v. State, 43 id.,

518; Edwards v. State, 47 id., 572; Casey v. State, 50 id., 392; Waddle v. State, 73 Texas Crim. Rep., 501, 165 S. W. Rep., 591.

On question of provoking difficulty and self-defense: Burt v. State, 38 Texas Crim. Rep., 397.

MORROW, Judge.—Appellant was convicted of the murder of his father, his punishment being assessed at six years confinement in the penitentiary.

Sunday morning prior to the homicide at night appellant and his father had some words in regard to the use of appellant's horse, the father desiring to use the horse driving cattle that day. Appellant agreed to the use of the horse provided he could get another horse and drive to Henrietta, to which place he was going. Henrietta was about eighteen miles distant. The father became very much enraged during the conversation and threatened to "get" or "fix" him. The son went to Henrietta, returning at night about 12 o'clock or 1 o'clock. Upon reaching home appellant put his team and buggy away and went to the house to go to bed. At the gallery he sat down to take off his shoes so he would not disturb his mother, who, it seems, was a light sleeper and perhaps somewhat nervous. This was the custom among the children for the reason above stated. While removing his shoes appellant saw someone approaching him with what he thought was a gun. He believed the party to be his father, and anticipated the execution of the threat made the previous morning. Appellant ran around the house to get out of danger. The sister of appellant, who had returned from some place where she had been during the day, also saw someone in the yard. She returned home shortly before appellant. After going to his room appellant went to another room to ascertain if any of the guns belonging on the place had been taken away from their accustomed place of deposit. He discovered that a rifle was gone. He took a shotgun and went to see if his father had the gun, and also to ascertain his purpose in being armed. On the gallery he found his father lying down on a cot. He says when he stepped upon the gallery his father turned and reached for his gun; appellant shot; his father was killed by this shot. A rifle was found at or near the cot where deceased was situated. The State's theory was that appellant got the shotgun and sought his father for the purpose of killing him, and that the father was asleep when shot. Two theories were thus presented by the evidence: first, that by the State as above mentiond; second, by the defendant to the effect that his father had threatened his life in the morning, and that he anticipated the execution of the threats, his father being armed in the yard when appellant returned, and the immediate movement of his father to secure the gun at the time he, appellant, went upon the gallery. His theory also was that it was not his purpose to kill but to understand from his father what his purposes were under the circumstances as presented in the morning and at night. The case was tried upon these conflicting theories. It was also in evidence that the

deceased was high-tempered and became enraged easily at members of his family, and whipped his children at times in a cruel manner when so angered, and in doing so used ropes and quirts. It was also shown that he treated the girls in the same manner as he did the boys with reference to these whippings. There was evidence also that the deceased in anger assaulted his wife, the mother of appellant. Appellant testified that his father tried to kill his mother at one time; he said he would kill her and got cartridges for that purpose; and he got a gun and threatened to kill his mother at another time and was prevented by members of the family; that this occurred about a year before the homicide. Other witnesses testified to the same conduct of deceased towards his wife on these and other occasions. There was evidence that when deceased was not enraged or angered he treated his family fairly well, and it was only when he was in anger that he treated them in the cruel manner indicated. Evidence with reference to these matters covered a period of about fifteen years. Several witnesses who had known the deceased for twenty-five or thirty years testified that his general reputation for peace, quietude and order in the community was good. Many of these witnesses were cross-examined with reference to fights or quarrels that the deceased had been engaged in and with reference to his having been a high-tempered, quarrelsome man, many of them admitting that he had been engaged in fights and that he was quarrelsome and high-tempered. Murder, manslaughter and self-defense were issues raised by the evidence and submitted to the jury by the court.

Mrs. Yarbrough, a lady about sixty-nine years of age, a witness for the defendant, testified on direct examination to numerous acts of cruel treatment on the part of the deceased of the appellant and other members of the family in his presence. On cross-examination she indicated that she was cognizant of some facts that were not drawn out on direct examination and indicated a hesitancy to relate them. The counsel for both the State and defendant urged her to proceed. It developed that the occurrence she had reference to took place eight years prior to the homicide. The court then of his own motion directed her not to give the testimony, the appellant reserving the bill of exceptions on various grounds, in which it is stated that her testimony would have been as follows:

"That about eight years ago, and shortly prior to the birth of the said child, she was present in the home of the deceased, and saw the deceased beat and inflict serious injury upon the wife of the deceased and the mother of the lunatic child; and that shortly thereafter, and as a result of such beating and striking, the said child was born prior to its natural time and as a result thereof said child was and has been a lunatic from birth and wholly without mind or reason and that the defendant was present and knew of his father's treatment of his mother at said time."

Some of this statement is manifestly the conclusion of the witness. That the premature birth and idiocy of the child resulted from the

assault would come within the class of opinion testimony. The only part of the testimony which would in our judgment have been relevant to the issues in the case would have been that showing that the deceased assaulted his wife, and this only in the event appellant knew or had been informed of it prior to the time of the homicide. Specific acts of violence committed by deceased on others, when known to the appellant, would have been admissible on the issue of self-defense. Heffington v. State, 41 Texas Crim. Rep., 315; Sprangler v. State, 41 Texas Crim. Rep., 424; Hysaw v. State, 69 Texas Crim. Rep., 562, 155 S. W. Rep., 941; Branch's Ann. P. C., p. 1175, and cases there cited. Appellant disclaimed any knowledge of the occurrence about which Mrs. Yarbrough sought to testify. He said: "I do not remember the conduct of my father toward my mother when she was sick. I do not remember of him doing anything to her at that time. I remember when the last child was born. I was at home then, but I do not remember of anything that happened at that time between my father and my mother." The fact that deceased did assault his wife and threatened and apparently made preparation to kill her on various occasions much nearer the date of the homicide than that of the proffered testimony of Mrs. Yarbrough and that these occurrences were known to appellant was established beyond controversy. The fact that the deceased was a violent, abusive man and cruel to the members of his family when angry can hardly be said to have been a disputed issue. This fact was proven by every member of the family who testified and by many of the neighbors. The only evidence controverting it was that in his conduct with the public he bore the reputation of being a peaceable, orderly man, and the fact that witnesses who had been in the family at times had seen no misconduct on his part. That the deceased had struck and abused his wife in the presence of appellant was testified to by appellant, he giving several instances in which the deceased had not only struck his wife in his presence but had tried to kill her, and these instances were to date, coming up to about one year before the homicide. Mrs. Smith, the mother of appellant, testified herself to various occurrences of this kind taking place in the presence of appellant, stating that during the year of the trial her husband had assaulted her; that she always kept his "sixshooter" away from him to prevent violence and kept his cartridges hidden from him; that on one occasion he had gotten his gun and said he was going to "thin them all out," and that on another occasion he pushed her out of the door on the ground and sprained her wrist and made her mouth bleed; that this occurred about two years ago and that on these occasions appellant was present.

In appellant's third bill of exceptions complaint is made that the court excluded the cross-examination of the witness Plemons, by which appellant would have shown that the deceased was convicted of theft in 1887 and sentenced to five years imprisonment in the penitentiary and was pardoned after serving three years. Appellant in the able brief and argument made by his attorneys insists that the scope of the exam-

ination of this witness was such as to render the exclusion of the matter mentioned reversible error, basing this contention upon the ground that the State had proved by the witness the general reputation of the deceased for a period of thirty-two years prior to the homicide. As we do not so interpret the bill of exceptions, we set out that part of it upon which this contention is based:

"The State placed on the witness stand Mr. A. D. Plemons, who testified in behalf of the State that he had lived in the same community with the deceased for thirty-two years prior to his death; that he was well acquainted with him during that time; that he had visited in his home during that time and was well acquainted with the family of the deceased; that he had worked for the deceased; that from his long acquaintance with the deceased, W. G. Smith, during the time he had known him up to the time of his death he knew his general reputation as a man of peace, quietude and order in the community in which he lived, and that such reputation was good."

We gather from this bill that it was shown that the witness had known the deceased for thirty-two years and that this long acquaintance enabled him to know his general reputation  The appellant at the time of the homicide was less than twenty-one years of age. An inquiry concerning the reputation of deceased for a period of twelve years prior to the birth of appellant would have been quite remote, so much so that it would not have been material. The record further discloses the fact that it was not upon the appellant's knowledge of the deceased's general reputation that he relied to support his plea of self-defense, but it was upon his knowledge of the deceased's violent temper and the specific acts of cruelty towards members of his family of which the deceased had been guilty and of which the appellant had knowledge. To show the improbability of the truth of appellant's evidence of deceased's misconduct towards his family the State introduced witnesses, among them the witness Plemons, to show that the general reputation of deceased as a man of "peace, quietude and order" was good. The specific acts of violence proved by appellant covered a period beginning about the time that appellant was old enough to understand and remember such occurrences and extending up to the time of the homicide. It was upon the knowledge of these facts and the things that happened at the time of the homicide and the threats of the deceased that appellant relied. We can not assume, and as we construe it the bill does not show, that the court permitted the State to rebut the inference to be drawn against deceased's character from the specific acts proved by the admission of evidence covering a period long antedating the birth of appellant. Moreover, the issue involved was not whether the deceased bore the reputation of an honest man. Appellant introduced no evidence upon that subject. All of his testimony raising the issue of the character of the deceased bore upon his violence and cruelty. Since there was no issue made by appellant as to the reputation or character of deceased for honesty and fair dealing, and since the evidence touch-

ing these matters would have been irrelevant if offered, we think that the terms "peace, quietude and order" used in the bill as describing the character of the deceased could not fairly be applied to a phase of his character which was not involved.

Another bill contains the following: "The defendant placed the witness J. C. Wilson on the stand to testify in his behalf and said witness testified that he lived near the home of the deceased at the time of the homicide; that he went over to the home of the deceased shortly after the killing; that he left home about five minutes after 1 o'clock and was eight or ten minutes getting from his home to the home of the deceased; that he saw the defendant, Alfred Smith, when he reached the home of the deceased and that he was in a very excited state of mind and was crying; that he was laying on the bed crying; that the defendant talked to him and told him how it occurred; that he seemed to be bothered pretty bad,—like he was excited; he would tell it a piece a minute or two then he would stop and cry. Whereupon, the defendant's counsel asked the witness the following question: Q. 'Do you remember his calling his father?' To which the witness answered: 'Well, not at that time, but later on in the night he called his father and wished his father would kill him; he was out in the yard then.' To which question and answer the district attorney objected for the reason it would be a self-serving declaration and does not throw any light on the case. Whereupon, the court made the following remark, to the objection of the district attorney: 'I would have ruled with you but it is already answered.'"

This evidence was not admissible as res gestae. It is remote in point of time, and while that alone under the decisions of this court would not determine its character, we are not advised by the record that it possessed any of the requisite elements of res gestae. It appears that prior to the time the statement was given the appellant had related the events connected with the homicide to the witness, and it appears from the record that the witness first saw the appellant more than an hour after the homicide and that a few minutes after the homicide he had detailed the events of it to his mother, to whose room he went after shooting the deceased. According to the bill, when the witness first saw the appellant he was lying on the bed crying. What time elapsed and what events transpired during the time intervening and before the remark which he testified to was made are undisclosed except that the bill shows that at the time the appellant made the remark he was out in the yard and that he did not make it at the time the witness had the first conversation with him. Vernon's Ann. C. C. P., pp. 607-609; Deneaner v. State, 58 Texas Crim. Rep., 624; Foster v. State, 8 Texas Crim. App., 248.

The evidence to which the remark of the court referred was in the nature of a self-serving statement, and we think clearly inadmissible. Walker v. State, 13 Texas Crim. App., 618; Cyrus v. State, 74 Texas Crim. Rep., 437, 169 S. W. Rep., 679; Branch's Ann. Penal Code,

p. 58, sec. 90, and cases listed. Article 787, C. C. P., prohibits the trial judge from commenting upon the weight of the evidence. An infraction of this rule is error but is reversible only where prejudicial. Rodrigues v. State, 23 Texas Crim. App., 503. In Branch's Ann. Penal Code, p. 168, there are many cases cited supporting this principle. The appellant insists that to overrule this assignment would be in conflict with the opinion of this court in the case of Simmons v. State, 55 Texas Crim. Rep., 441. There the remark made by the court was as follows: "If there had been any objection made at the start I might have sustained it on the ground that it was immaterial and irrelevant." The court, in an opinion by Judge Ramsey, held this remark prejudicial and ordered a reversal of the case. The evidence in that case which was thus referred to was not only admissible but highly important to the defendant, and its relation to the case was such that the remark of the court, that it was immaterial and irrelevant, was calculated not only to weaken the effect of the evidence in question but to discredit the theory of the appellant upon which the evidence was introduced, and thereby materially injure his case. The court in that case recognized the fact that under the established rule remarks of this character are reversible only when they are prejudicial. It says: "We think the court was in error in making such remark in the presence and hearing of the jury; nor can we say that the error was not harmful." It is manifest not only from the language of the case that it was not the purpose of the court to abandon the rule stated but subsequent decisions by the same judge emphasized this view. In Pilgrim v. State, 59 Texas Crim. Rep., 231, in an opinion of the court delivered by Judge Ramsey, this point was involved, and there was an affirmance of the case upon the principle that the remark of the court was not prejudicial, and in the same volume, page 98, a similar conclusion was reached and declared in an opinion by Presiding Judge Davidson.

In Wofford v. State, 60 Texas Crim. Rep., 624, there was an affirmance expressly concurred in by Judge Ramsey and Presiding Judge Davidson, in which one of the bills involved the point under discussion, and reference to it is quoted from the opinion as follows:

"When the motion was made by appellant's counsel that the question which was propounded by the district attorney to prosecutrix, and her answer thereto, as hereinbefore referred to, be stricken from the record, and that the jury be instructed to disregard the same, the record shows that the trial judge made in the presence and hearing of the jury the following statement: 'I do not know what the law is on that point; but I think it ought to be the law, that whether or not the alleged injured party has had carnal intercourse with other men in cases like this ought to be admitted in evidence by way of mitigation or aggravation of the crime and the punishment. The question may not be admissible under the law, but it ought to be. It is in now. Produce your authorities, and if that is the law I will strike it out later.'

"Appellant assigns error upon these remarks of the trial judge upon

the ground that they constituted a charge or comment upon the weight or value of the testimony and an expression of the opinion of the court as to the guilt or innocence of the accused. We do not so construe the remarks complained of. At most they amounted only to a comment or expression of opinion as to the admissibility, as a matter of law, of a class of testimony in a class of cases, and the purpose for or grounds upon which such testimony might be admissible in such cases. The court expressly stated that 'the question (which had already been asked and answered without objection) may not be admissible under the law, but it ought to be. It is in now. Produce your authorities, and if that is the law I will strike it out later.' Authorities were produced and the evidence complained of was stricken out and the jury instructed to disregard it. In the light of the record, we are not of the opinion that the remarks complained of constitute reversible error." Older cases in point are McGee v. State, 37 Texas Crim. Rep., 668, and Clements v. State, 39 Texas Crim. Rep., 279.

In the present case appellant's rights would not have been transgressed if the court had excluded the testimony. This being true, was the appellant injured by the court stating to the district attorney, in effect, that he would have excluded the testimony if objection had been made in time? The appellant got the benefit of the inadmissible testimony, and there is nothing pointed out in the bill which indicates that the remark of the court, or the relation of the testimony with reference to any other phase of the case, was such as to be prejudicial. The trial court in allowing the bill says: "This remark was directed to counsel and constituted the court's ruling upon the question of law which confronted him." The bill does not state that the remark was made in the presence and hearing of the jury. However, if it did do so, it would not in our opinion present reversible error.

The court refused a requested charge informing the jury of appellant's right to arm himself and seek the deceased for an explanation. This refusal is assigned as error.

As we understand the decisions of this court, they uniformly hold that where the facts of the case raise an issue of provoking the difficulty by the appellant and the court in submitting the issue of self-defense qualifies it by submitting the issue of provoking the difficulty, it is incumbent upon the court, is requested by appellant, to inform the jury that appellant would have a right to arm himself and seek the deceased for the purpose of explanation, and the fact that he did so arm himself and seek the deceased would not modify his right to act in self-defense against any attack or threatened attack from the deceased. The leading case is Shannon v. State, 35 Texas Crim. Rep., 2. The appellant there had borrowed a pistol, sought the deceased and the homicide resulted. The court says: "The issue in this case was whether appellant provoked the difficulty which led to the homicide, and if so, with what intent. The charge of the court was clear and instructed the jury that if the appellant provoked the quarrel for the purpose of

killing deceased, it would be murder, though done in self-defense. If the interview was requested in a friendly spirit to settle a difficulty or misunderstanding and defendant killed in defense of his life, it would be justifiable homicide."

In Williford v. State, 38 Texas Crim. Rep., 393, the exact question involved in the present case was passed on. Discussing the refusal of the court to give a requested charge advising the jury that appellant had a right to arm himself and seek the deceased for a lawful purpose, the court uses the following language:

"Said charge was refused, and appellant excepted. By referring to the court's charge on self-defense, it will be observed that the court gave a full charge on this subject, and authorized the defendant to slay deceased if deceased made the first assault on him, from which it reasonably appeared to him that his life was in danger, or he was in danger of serious bodily injury; and the court also instructed the jury that appellant would have the right to slay the deceased if deceased made an assault on him of a violent and dangerous character, less than an assault with intent to take his life or inflict upon him serious bodily injury; provided he used all other means, except retreating, in order to avoid the necessity of slaying the deceased. It will be observed, further, that the court gave no charge predicated on the idea that the defendant may have provoked the difficulty; and thus his right of self-defense was unlimited and unabridged by any charge on provocation. If the court had given a charge on provocation or bringing on of the difficulty on the part of the defendant, then the charge asked by appellant would have become necessary, but not otherwise."

A number of cases are cited in Branch's Digest, section 442, wherein this question has been reviewed by the courts, and so far as we have examined them, those which have held that a charge on the right of the appellant to arm himself and seek the deceased for an explanation was required are those in which the court had failed to give the appellant a charge awarding him the perfect right of self-defense; in other words, the court has uniformly followed the rule in Williford v. State, supra. This rule has been adhered to, so far as we have been able to discover, without deviation by the court and without dissent by any of its members. Harrelson v. State, 60 Texas Crim. Rep., 534; Holmes v. State, 69 Texas Crim. Rep., 588, 155 S. W. Rep., 205; Fox v. State, 71 Texas Crim. Rep., 318, 158 S. W. Rep., 1141; Strickland v. State, 71 Texas Crim. Rep., 582, 161 S. W. Rep., 110; Carey v. State, 74 Texas Crim. Rep., 112, 167 S. W. Rep., 366; Ford v. State, 77 Texas Crim. Rep., 252, 177 S. W. Rep., 1176.

The charge of the court in this case gave the appellant the perfect right of self-defense unabridged by any charge on provoking the difficulty, and having done so, was, under the decisions mentioned, justified in refusing the requested charge.

Bill of exceptions No. 4 complains of the action of the court in permitting the witness Fields to repeat a conversation with the deceased

which was made in the absence of the appellant. We quote the testimony from the bill: "Well, he was talking to me something like three weeks before, three or four weeks before his death. The defendant was not present. The deceased was over there to look at some cows that he was figuring on buying and he told me that his children did not love to work in cotton and that he had quit the raising of cotton and went into the milk business; that he wanted to educate them; that they could milk and go to school and that they could come from school and milk and that he was going to send the larger children off to school." Appellant testified that he attended school, and that his father sent him. For the last three years up to the time of the homicide he had spent eight months of each year away from home at school. The wife of the deceased testified that her husband quit raising cotton so that the children could go to school; that her husband had formerly raised cotton as his principal crop, but in later years had confined it to about five acres, and sent the children, including appellant, to school to various places. It is thus made apparent that substantially the same evidence as that complained of in the bill was in evidence from other sources without objection. It is settled in this State that the admission of testimony is not cause for reversal where the same facts are proven without objection. Wagner v. State, 53 Texas Crim. Rep., 306; Rogers v. State, 26 Texas Crim. App., 404; Vernon's C. C. P., art. 938, p. 904, subdiv. 27, and cases listed. Under this rule there is no material error shown in the bill.

Finding no reversible errors in the record it is ordered that the judgment of the lower court be affirmed.

*Affirmed.*