WESLEY CRIPPEN V. THE STATE.

No. 4196.   Decided November 8, 1916.

**1.—Assault to Murder—Aggravated Assault—Practice on Appeal.**

Upon trial of assault to murder and a conviction for aggravated assault, defendant's complaints to the charge of· the court on the question of an assault with intent to murder pass out of the case and need not be discussed on appeal.

**2.—Same—Evidence—Motive—Arrest Without Warrant—Police Officer.**

Where, upon trial of assault to murder and a conviction for aggravated assault, defendant contended that the party injured in arresting him at different times for violation of city ordinances did not act in the discharge of his official duties but with malice towards him in order to humiliate and embarrass him, there was no error in permitting the State to show that all arrests by the police officers of the city were made without warrants of arrest and upon instructions of their superior officers, and that the party injured acted in the same manner.

**3.—Same—Arrest Without Warrant—Self-defense.**

Where, upon trial of assault to murder and a conviction of aggravated assault, the evidence showed that the difficulty grew out of certain arrests of defendant by the party injured, but at the time of the homicide defendant had been entirely released from all such arrests and had made no attempt to shoot the party injured when he was arrested, it is unnecessary to discuss the matter as to what rights of self-defense would have arisen had the shooting occurred when he was arrested or held in custody by the party injured.

**4.—Same—Constitutional Guaranties—Unreasonable Seizures.**

While the Constitution guarantees that the people shall be secure in their persons from all unreasonable seizures, etc., yet our law expressly authorizes arrests by peace officers in a great many instances without a warrant of arrest, and especially so under municipal ordinances and rules.

**5.—Same—Evidence—Threats—Arrest Without Warrant—Good Faith.**

Where, upon trial of assault to murder, defendant claimed that the party injured did not act in the discharge of his official duties in arresting the defendant, there was error in admitting in evidence the ordinance of the city under which the party injured acted in arresting defendant without a warrant, etc., to show the good faith of the deceased in making the arrest, and also threats by the defendant.

**6 —Same—Charge of Court—Self-defense—Burden of Proof.**

Where, upon trial of assault to murder and a conviction of aggravated assault, the evidence raised the issue of self-defense upon which the court submitted a correct charge, and did not shift the burden of proof nor ignore the doctrine of unreasonable doubt, there was no reversible error on that ground.

**7.—Same—Adequate Cause—Arrest—Charge of Court.**

Where, upon trial of assault to murder and a conviction of aggravated assault, the evidence showed that the shooting by the defendant of the party injured had not occurred during the time of the arrest of the defendant by the party injured, or while he was under arrest, there was no error in refusing a charge that the arrest of the defendant by the party injured was in itself adequate cause; the court otherwise correctly charging on adequate cause.

**8.—Same—Charge of Court—Self-defense—Provoking Difficulty.**

Where, upon trial of assault to murder, the court submitted self-defense and did not limit the same by a charge on provoking a difficulty, there was no error in omitting to charge the jury that the defendant had the right to arm himself and seek the party injured for an explanation. Following Williford v. State, 38 Texas Crim. Rep., 393, and other cases.

**9.—Same—Charge of Court—Unwarranted Arrest.**

Where, upon trial of assault to murder and a conviction of aggravated assault, the evidence showed that at the time of the assault defendant was released from arrest, there was no error in refusing a charge that the arrest of defendant without warrant by the party injured was a great provocation, etc.

**10.—Same—Uncommunicated Threats—Charge of Court.**

Where, upon trial of assault to murder and a conviction of aggravated assault, uncommunicated threats were in evidence, a charge of the court restrict-

ing the jury to the consideration of such threats for the sole purpose of ascertaining the condition of mind of the party assaulted, was reversible error, although the court may not have believed such testimony. Following Howard v. State, 23 Texas Crim. App., 265, and other cases.

Appeal from the District Court of McLennan. Tried below before the Hon. Richard I. Munroe.

Appeal from a conviction of aggravated assault; penalty, two years confinement in the county jail.

The opinion states the case.

*Williams & Williams* and *Edgar Harold,* for appellant.—On question of illegal arrests: Cortez v. State, 44 Texas Crim. Rep., 169; Lynch v. State, 41 id., 510; Branch's Crim. Law, sec. 477.

On question of court's charge on uncommunicated threats: Huddleston v. State, 54 Texas Crim. Rep., 93; Sebastian v. State, 42 id., 84; Kirklin v. State, 73 Texas Crim. Rep., 251, 164 S. W. Rep., 1016.

On question of going armed to seek explanation: Cloud v. State, 69 Texas Crim. Rep., 76; 153 S. W. Rep., 892; Beard v. State, 47 Texas Crim. Rep., 50; Mitchell v. State, 50 id., 180; Tilmyer v. State, 58 id., 562; Shannon v. State, 35 id., 2.

*C. C. McDonald,* Assistant Attorney General, for the State.

PRENDERGAST, PRESIDING JUDGE.—Under an indictment and trial for an assault to murder J. R. Spillers, a police officer of Waco, appellant was convicted of an aggravated assault and his punishment assessed at two years in the county jail.

The testimony on behalf of the State by a preponderance would show a most aggravated case of an assault with intent to murder—an attempted assassination—and would show such a state of fact as to exclude manslaughter if Spillers had been killed. On the other hand, by his own testimony, supported by some other, appellant showed such a state of fact as to show that if he had succeeded in killing Spillers his offense would have been no higher than that of manslaughter, thereby raising the issue of aggravated assault. On this point the jury acquitted him of assault to murder and found him guilty of aggravated assault, as stated. Appellant introduced testimony of threats against him by Spillers, both communicated and uncommunicated. In his testimony, Spillers denied all such threats, testifying that he made none of them. Appellant by practically his testimony alone raised the issue of self-defense from apparent danger. The testimony of the State by Spillers and other eyewitnesses would exclude self-defense.

Appellant assigns a large number of claimed errors,—a good many to the admission of testimony; others, to various paragraphs of the court's charge, and still others to the court's refusal to give some of his special charges. As most of his refused charges and some of his complaints as to the court's charge were solely with reference to the

question of an assault with intent to murder and as he was acquitted of that offense, they pass out and are not discussed.

The shooting occurred on the night of July 28, 1915. In the claimed discharge of his official duties Spillers arrested appellant on October 1, 1914, for a minor offense against the city ordinances of Waco. Again, early in December, following, he again arrested him for the violation of another city ordinance. The arrest in both instances was made without Spillers having a warrant for appellant's arrest at the time. Appellant was tried the next day after his first arrest in the city court and acquitted. He was tried under the second arrest on December 8, 1914, and convicted. He appealed that case to the County Court. The charge in that case was vagrancy. After the said appeal, twice before July 28, 1915, appellant forfeited his bond. On July 28th, when his case was again called, at which time it was set for trial, he failed to appear, and his bond was again forfeited. Spillers was a witness against him in that case and was present when this last forfeiture was taken. The assistant county attorney in charge of that prosecution and other officers in the sheriff's department at the time instructed Spillers that if he could find appellant to again arrest him so as to have him present the next morning for trial. No warrant for his arrest was issued, and Spillers had none that night when he again arrested him in compliance with his instructions from said officers. He found him that night in the reservation district of Waco and arrested him. Appellant did not resist arrest at that time, nor did he attempt to escape while arrested and in custody. When arrested on this occasion, appellant by his own testimony, abused and cursed Spillers in the most outrageous way, and offered and wanted to fight him, if Spillers would take off his pistol. Spillers called for the officer in charge of the hoodlum wagon for the purpose of transferring him to the jail and confining him therein. The officer with this wagon soon appeared. Appellant got on it and with that officer went to jail. Spillers did not go with them, and had nothing more to do with the matter. Within a very few minutes, three or four, he says, he was ordered released by a deputy sheriff and was released from jail and from this arrest. Appellant is shown then to have in effect stated he was going to arm himself and kill Spillers. He proceeded to hunt up a shotgun and shells with large shot, loaded his gun and went to hunt Spillers to kill him, found him, shot him three times, the three loads taking effect in Spillers' body, wounding him most dangerously, shot at him a fourth time, but missed him, and then fled.

Appellant contended, and so testified and introduced other testimony somewhat tending to support him, to the effect that each of said arrests by Spillers of him, and especially on the night of July 28th, was because of Spillers' malice towards him, and done to humiliate, embarrass, discredit, punish and impose upon him, and that he was using and had used his official position as a policeman to accomplish these purposes and to run over and overawe him; that Spillers' said actions and con-

duct were not actuated by any desire on his part to discharge his duties as a policeman, but were solely for the purposes stated. With these issues thus made by appellant, we think all the testimony of Spillers himself and of the various officers of the city and county to the effect that all arrests by the police officers of said city were made without warrants and that the police officers were so instructed to make arrests without warrant by their superior officers and that Spillers was instructed by the assistant county attorney and the other officials to arrest appellant on this occasion,—in other words, all such testimony as would show, or tend to show, the reverse of appellant's contention as just stated and that Spillers was acting in good faith in the discharge of his duties as a policeman,—was admissible. This disposes of a large number of appellant's bills of exception to the admission of testimony on these lines. The court properly admitted said testimony on the question of the motive of Spillers in making said arrest and restricted the jury to the consideration thereof for that purpose alone.

If appellant had resisted said arrest at the time it was made, or had attempted to relieve himself of arrest after being arrested, and at that time had shot Spillers, his rights would have been very different from what they were under the unquestioned facts shown by this record. He did not then shoot Spillers, nor attempt to shoot him, but shot him some twenty-five minutes to an hour thereafter, and after he had been entirely released and relieved from all arrest. It is unnecessary, therefore, to discuss what his rights would have been if the shooting had occurred when he was arrested or during his confinement under that arrest by Spillers.

Our Constitution (sec. 9, art. 1) guarantees: "The people shall be secure in their persons . . . from all *unreasonable* seizures . . ." Our law has all the time, and especially since our codes were adopted in 1856 (arts. 259-263) expressly authorized arrests by peace officers in a great many instances without warrant, and expressly authorized municipal corporations to establish rules authorizing arrests without warrant in a great many instances. These statutes have uniformly been sustained by all the courts as constitutional. (2 Branch's Ann. P. C., pp. 1114-1115.)

No error is shown in the court's action in admitting the testimony complained of by appellant in his bills from 2 to 11, inclusive, and 15, along the lines mentioned. As qualified by the court and as shown by the record, the court correctly admitted the testimony of a threat by appellant against Spillers, objected to in appellant's twelfth bill. The ordinance of said city giving the marshal thereof authority to arrest without warrant, complained of in appellant's thirteenth bill, was admissible. We think it applied not only to the marshal personally but to all policemen under him in the city. Another ordinance of the city making it an offense for any person to appear in certain public places mentioned in company with a common prostitute was also admissible. This ordinance, while it may not have specifically covered the first

offense for which Spillers arrested appellant, yet had a bearing upon the good faith of the officer in making the arrest, was admissible along the same line as covered by his bills above mentioned.

After giving the seventh paragraph of the charge on self-defense, the court in the eighth gave this: "If you believe that the defendant committed the assault as a means of defense, believing at the time he did so (if he did do so) that he was in danger of losing his life or of serious bodily injury at the hands of said J. R. Spillers, then you will acquit the defendant, and say by your verdict 'not guilty,' or if you have a reasonable doubt thereof, you will acquit him." This did not shift the burden of proof to appellant nor ignore the doctrine of reasonable doubt as applied to a defense, as complained in one of appellant's bills. This paragraph of the charge was a correct enunciation of the law applicable in this case.

Nor did the court err in refusing to charge, as appellant complained he should, that the arrest of appellant on said night of July 28th was of itself adequate cause. If the shooting had occurred at the time of the arrest, or while appellant was under arrest, and in an attempt to secure his liberty therefrom, such charge might have been applicable, but the court gave the proper charge on the subject, submitting to the jury for them to determine from all the facts and circumstances whether or not adequate cause existed so as to reduce the offense from assault to murder to aggravated assault.

The court did not err in omitting to charge in substance that the appellant had the right to arm himself and seek Spillers for any explanation, as complained of in appellant's twenty-third bill. The court submitted self-defense and did not limit in any way such issue with a charge on provoking the difficulty. The law is settled that if the court in his charge does not limit the accused's right of self-defense by a charge on provoking the difficulty, or otherwise, but submits his right of self-defense on every defensive theory, it is not error to refuse to charge on his right to arm himself and seek an explanation. Williford v. State, 38 Texas Crim. Rep., 393; Harrelson v. State, 60 Texas Crim. Rep., 534; Holmes v. State, 69 Texas Crim. Rep., 588; Fox v. State, 71 Texas Crim. Rep., 318; Strickland v. State, 71 Texas Crim. Rep., 582; Carey v. State, 74 Texas Crim. Rep., 112; Ford v. State, 77 Texas Crim. Rep., 252, 177 S. W. Rep., 1176.

As the record presents this case, it was unnecessary, and it would have been improper, for the court to have told the jury that the said arrest on July 28th was illegal, unwarranted and regarded by the law as a great provocation and a species of aggravated assault, as contended by appellant should have been given. As stated, if the shooting had occurred at the time of the arrest, or an attempted release therefrom, such charge might have been proper, but the shooting did not then occur, but occurred at such a time thereafter as to make such charge improper.

In a separate paragraph the court charged the jury thus: "Un-

communicated threats, if any, against the life of a person accused of assault with intent to murder may be considered by the jury in ascertaining the condition of the mind of the party assaulted at the time of the shooting." Appellant at the proper time and in the proper way excepted to this charge and in every way properly preserved and presented the question. His specific objection, among other things, was that it was more restrictive than is the law and prevents the jury from considering said uncommunicated threats for other legitimate purposes, and especially for the purpose of corroborating the evidence of communicated threats and throwing light upon who probably began the difficulty. In our opinion, appellant's complaint is correct and requires a reversal of the judgment. Unquestionably there was testimony of repeated threats which were uncommunicated as well as threats which were communicated. Both were denied by Mr. Spillers. The effect of the charge was to restrict the jury to the consideration of uncommunicated threats for the sole purpose of ascertaining the assaulted party's condition of mind, and prevented its consideration for the purpose of corroborating other evidence of communicated threats which were denied by Spillers, and prevented the jury from considering it for the purpose of determining who probably began the difficulty at the time of the shooting. The appellant's testimony perhaps alone raised the latter question, and it may be that the great preponderance of the testimony was against him on this issue, and the jury might not and probably should not have believed him on that issue, but this was a question which the court could not decide nor take away from the jury. They had the right to do this. The court should not have charged on the subject of uncommunicated threats at all. Howard v. State, 23 Texas Crim. App., 265; King v. State, 9 Texas Crim. App., 515; Reeves v. State, 34 Texas Crim. Rep., 483; Wallace v. State, 44 Texas Crim. Rep., 300; Poole v. State, 45 Texas Crim. Rep., 348; Adams v. State, 47 Texas Crim. Rep., 347; Bethune v. State, 49 Texas Crim. Rep., 166; Underhill's Crim. Ev. (2d ed.), sec. 326, and authorities there cited.

For this error in the court's charge, the judgment is reversed and the cause remanded.

*Reversed and remanded.*