RAY ANDERSON v. THE STATE.

No. 5428. Decided November 12, 1919.

Rehearing Denied January 14, 1920.

1.—Murder—Change of Venue—Discretion of Court.

Where, upon trial of murder, the defendant prestented an application for a change of venue on the ground of prejudice, which was controverted by the State upon statutory grounds, and evidence was heard for and against the same, and the only witness for defendant who testified that he did not

believe he could obtain a fair and impartial trial in said county was related to the defendant, there was no error in overruling the application.

### 2.—Same—Charge of Court—Manslaughter—Words and Phrases.

Where, upon trial of murder, it appeared that the deceased was not the person against whom the fatal shot was aimed, and the court gave a correct charge on manslaughter and the use of the word "intentional" therein which could not affect said charge of the court so as to make it injurious to the defendant there was no reversible error.

### 3.—Same—Charge of Court—Act of Another—Self-Defense—Deadly Weapon.

Where, upon trial of murder, the defendant claimed justification for his act in shooting and killing the deceased on the ground that the brother of the deceased had a shotgun and raised the same in a threatening manner, and that defendant's action in firing the gun was in self-defense against the purported attack of the brother of the deceased, and the court, considering his charge as a whole, instructed the jury that defendant would be justified in acting upon a reasonable apprehension of danger, as viewed from his standpoint regardless of whether he shot before, at the time of, or after the brother of deceased fired his gun, etc., and regardless as to whether said gun was a deadly weapon, there was no reversible error.

### 4.—Same—Defendant's Right to Arm Himself—Charge of Court.

Where, upon trial of murder, the evidence showed that defendant took the gun along because he feared a clash with his adversaries with whom he had had a previous difficulty, and one of whom he killed, for the purpose of barring them off to have a conversation with them to settle the matter, and these matters were fully covered by the court's charge, which instructed the jury that defendant had the right to arm himself against any attack which he might fear and to interview his assailant in regard to the previous difficulty, there was no reversible error.

### 5.—Same—Sufficiency of the Evidence—Conflict of Evidence.

Where, upon trial of murder, the evidence was sufficient, although conflicting, to sustain the conviction, there was no reversible error.

### 6.—Same—Charge of Court—Presumption—Intent to Kill—Words and Phrases.

Where appellant, in his motion for rehearing, contended that the trial court in failing and refusing to give in his charge articles 1105 and 1106, Vernon's Penal Code, with reference to the presumption of the law as to an attack by deceased's brother with a shotgun capable of producing death or serious bodily injury upon the defendant or his codefendant, the record showed, that viewing the charge as a whole, such presumption was not limited thereby, there was no reversible error, and the use of the word "capable" instead of the statutory term "calculated" was favorable to defendant.

### 7.—Same—Charge of Court—Right to Go Armed—Self-Defense.

Where appellant in his motion for rehearing contended that the court's charge on the right of going armed was too restrictive and made an attack upon the court's original opinion in sustaining the court's said charge, this court finds no reason to change its original opinion thereon, but further observes that where the trial court gave to the appellant a charge on his right of self-defense, as was done in this case unlimited by any charge on provoking the difficulty, or other theory of imperfect self-defense, a charge on appellant's right to go armed to the place where he met the deceased, is unnecessary. Following: Crippen v. State, 80 Texas Crim. Rep., 293, 189 S. W. Rep., 496, and other cases.

Appeal from the District Court of Jones. Tried below before the Hon. W. R. Chapman, judge.

Appeal from a conviction of murder; penalty, thirty years imprisonment in the penitentiary.

The opinion states the case.

*W. S. Pope* and *Stinson, Chambers & Brooks,* for appellant.—On question of presumption of intent of the deceased: Deneaner v. State, 58 Texas Crim. Rep., 624 127 S. W. Rep., 201; Kendall v. State, 8 Texas Crim. App., 569; Hays v. State, 82 Texas Crim. Rep., 427, 199 S. W. Rep., 621; Alsup v. State, 210 S. W. Rep., 195; Cockran v. State, 13 S. W. Rep., 651.

On question of change of venue: Dobbs v. State, 103 S. W. Rep., 918; Sorrell v. State 74 Texas Crim. Rep., 505, 169 S. W. Rep., 299.

On question of court's charge on self-defense: Smith v. State, 123 S. W. Rep., 698.

*Alvin M. Owsley,* Assistant Attorney General, for the State.

LATTIMORE, JUDGE.—Appellant was indicted, tried and convicted for the murder of one Otto Smith, and his punishment fixed at thirty years in the penitentiary.

When the case was called for trial, an application was presented for a change of venue, the ground of which was that there existed in that county so great a prejudice against appellant that he could not obtain there a fair and impartial trial, this application being supported by the affidavits of two persons. The State controverted said application upon statutory grounds, and the court heard evidence, consisting of about a dozen witnesses, on behalf of appellant, and a number for the State. An examination of their testimony shows that several witnesses for appellant testified that there existed prejudice against him, but most of these showed a limited acquaintance in the different communities of the county and confined their testimony to the statements heard in those communities, there being only one of said witnesses who testified that in his opinion appellant could not obtain a fair and impartial trial in Jones County. It was shown that Jones County was a large and populous county, having in it about twenty-five thousand people. The burden of proof to establish the existence of the alleged prejudice in said county against him, was upon appellant in view of the State's contest and the State having shown by a number of witnesses who testified that they were acquainted throughout the county, and that in their opinion he could obtain a fair and impartial trial in said county, it would be the duty of this court to uphold the action of the trial court, unless satisfied that the judgment of the lower court was not the result of a fair and impartial decision of said question. The only witness for appellant

86 Texas—14

who testified that he did not believe he could obtain a fair and impartial trial in Jones County, was related to appellant. We are unable to say that the trial court incorrectly decided this issue against appellant.

Appellant's second objection and assignment of error is to the eighth paragraph of the court's charge, which is as follows:

"You are charged that when an act committed is the unlawful intentional homicide of a different person from the one intended and is without malice aforethought, and is done while the mind is under the immediate influence of sudden passion, arising from an adequate cause, as adequate cause has been hereinbefore defined to you, and renders the mind at the time incapable of cool reflection, the act, if a crime, would be of no higher grade than manslaughter."

We are unable to see under any construction of said charge, how injury was possible to appellant. The purpose of the paragraph is manifest, and if the word "intentional" be omitted, it would be a very fair statement of a correct legal proposition, and the inadvertent insertion of the word "intentional" does not in any conceivable way affect the sense of said charge, so as to make it injurious to appellant.

Appellant complains at paragraph 14 of the court's charge, which is as follows:

"You are charged that if you believe from the evidence that at the time Otto Smith, the deceased, was shot by Ray Anderson, if he was so shot, the said Will Smith made an attack upon Ray Anderson and F. W. Anderson, or either Ray Anderson or F. W. Anderson, or was about to make an attack upon the said Ray Anderson and F. W. Anderson, or either Ray Anderson or F. W. Anderson, with a gun capable of producing death or serious bodily injury, then in that event the law presumes that Will Smith intended to kill Ray Anderson or F. W. Anderson, or both."

An inspection of the record will show that appellant claimed justification for his act in shooting and killing the deceased on the ground that the brother of the deceased had a shotgun at and just prior to the shooting, which appellant claimed was raised in a threatening manner by the brother of deceased before he, appellant, had made any demonstration at all, and that his own action in firing his gun was in self-defense against the purported attack of the brother of deceased. His proposition, as stated, is that if appellant believed from his standpoint, that the brother of deceased was making an attack, or about to make an attack upon him or his father, with a gun, he would have the right to shoot in self-defense regardless of whether the gun was a deadly weapon or not. Appellant's view of the law is substantially correct, and if paragraph 14, at which his complaint is directed, was all that was said by the trial court, there might be just grounds for his criticism, but an inspection of paragraph 13 of said charge discloses that the court therein charged the jury as follows:

"You are charged that if you believe from the evidence that the defendant Ray Anderson, and F. W. Anderson, on the day of the killing of the deceased, Otto Smith, were traveling along the Anson and Tuxedo public road and approached deceased, Will Smith and Tom Smith as they were seated in a buggy in front of the residence of John Gooding, and that Will Smith shot at the defendant and F. W. Anderson, or either of them, or that Will Smith raised a gun as if to shoot the defendant and F. W. Anderson, or either of them, or that Will Smith shot the car in which the defendant and F. W. Anderson were seated, and you further believe that by reason of said acts, if any, on the part of Will Smith, or by reason of any or all of said acts on the part of Will Smith, if any, either when taken alone or in connection with all or any of the relevant facts and circumstances in evidence, you believe that there was created in the mind of the defendant Ray Anderson, or F. W. Anderson, a reasonable expectation or fear of death or serious bodily injury at the hands of Will Smith or Tom Smith or the deceased, or either of them, viewed from the standpoint of the defendant or F. W. Anderson at the time, and you believe that Ray Anderson, acting upon such reasonable expectation or fear of death or serious bodily injury of himself or F. W. Anderson, at the hands of Will Smith or Tom Smith or deceased, or either of them, shot and thereby killed the deceased, or if you have a reasonable doubt thereof, then you will find the defendant not guilty."

This paragraph of the charge fully covers the matter of appellant's complaint and objection, and instructs the jury that appellant would be justified in acting upon a reasonable apprehension of danger, as viewed from his standpoint, regardless of whether the gun was or was not a deadly weapon, and regardless of whether he shot before, at the time of, or after the brother of deceased fired his gun and regardless of whether Will Smith shot at all or not, and said paragraph 13 of the charge is a concrete application of the law of the case to its facts. The well recognized rule of construction is that the charge as a whole must be looked to, and not isolated paragraphs thereof.

Objection is further made to paragraph 16 of the charge, as being too restrictive of appellant's right to arm himself and seek his assailant for an interview. That portion of the charge complained of is as follows:

"You are charged that the defendant had the right, together with his father, F. W. Anderson, to seek the deceased or to seek Will Smith, or either of them, for the purpose of having an interview with them in regard to any difference that might have arisen between them as to a division of the feed crop raised by Otto Smith on the farm of F. W. Anderson in the year 1918, and also had the right to arm himself against any attacks the deceased or Will Smith or Tom Smith might make upon him or might make upon F. W. Ander-

son had he reasonably feared they or either of them would make upon him. or F. W. Anderson while doing so.''

If we examine the evidence in the record, we find that only one difference existed between the parties to this unfortunate tragedy, and that difference grew out of the division of the feed crop raised by Otto Smith upon the land of F. W. Anderson, the father of appellant. It is well settled that any instruction must be pertinent to the issues and evidence of the particular case, and this applies to any instruction given by the trial court in the instant case to the effect that one accused of homicide has the right to arm himself, or to arm himself and seek his assailant for any purpose. An inspection of the record in this case shows that after the difference arose between the deceased and the father of appellant over the division of the feed crop that appellant's father told him of the difficulty, and also told him that he was going up to the Swenson ranch and get another brother of appellant's to come home and help him cut and take care of this feed crop. Appellant testified that his father did not know the way to the Swenson ranch, and that he went with him to show him, and inasmuch as he knew they were coming back by the house of Otto Smith, that he procured the gun with which the killing took place. His own account as to why he got the gun, is given as follows in both his direct and cross-examination statements relative thereto. On direct examination he said: ''That was a sixteen guage pump gun belonging to me. I got the gun—I knew that he had to come back right by Mr. Otto Smith's house, and I got the gun, if we might come in contact with them. I could see from the way they acted here in town that they wanted trouble, and there was three of them, and I got the gun simply to protect my life and my father's life, to bar them off, to have a talk with them if I could and have them settle that matter without any trouble at all. I thought I could get it settled if I could have a peaceable talk with them, I felt like I could.''

On cross examination, with reference to this matter, appellant says: ''I stated that I got the gun when I got back home. I knew we had come by Otto Smith's and if we did come in contact with them I could possibly reason the thing with them and keep them barred off of us; I got the gun for protection only, to have a reasonable talk if we could, a peaceable talk.''

It thus appears that according to his own version of the matter, appellant took the gun because he feared a clash with the three Smiths, and that at most, he thought by the use or possession of the gun he might keep them barred off and have a conversation with them, and have them ''settle that matter,'' evidently referring to the trouble over the feed crop. These were the most favorable constructions of which the evidence was susceptible, and they were fully covered by the charge of the court, which told the jury that appellant had the right to arm himself against any attack which he might

fear the Smiths would make upon him or his father, and that he had the right to arm himself and seek his assailant to have an interview in regard to any difference over the feed crop.

As intimated above, no other trouble, or cause for trouble, between the Smiths on the one hand, and appellant and his father on the other, is suggested by any evidence except that of the division of the feed crop. We think the charge applicable and not too restrictive.

We are unable to agree with the contention that the verdict is unsupported by the evidence. Deceased was a tenant on the land of appellant's father, and a dispute had arisen over the division of the feed crop, and according to the State's evidence, very harsh language was indulged in by the father of appellant, and threats made by him. The State's evidence shows that the next day after the beginning of the trouble between the deceased and appellant's father, that the Smiths met appellant and his father, the former being armed with a gun and the latter with a club, and that the Smith boys turned back and avoided an actual meeting with them. It was asserted by the State's witnesses that on that day, and in the presence of the appellant, his father again threatened the Smith boys, calling them opprobrious names. On the occasion of the homicide the three Smiths were in a buggy in the road in front of the house of one John Gooding, talking to Gooding, when a car approached, in which were appellant and his father, the latter driving the car. As the car passed the buggy, according to the State's witnesses, appellant raised a gun quickly and fired, killing the deceased. A sharp conflict appears in the evidence as to which of the parties made the first demonstration on that occasion. Both the Smiths and John Gooding swear that their party made no demonstration or hostile movement at all until after appellant had shot. Appellant swears that Will Smith raised his gun as if to shoot before he, appellant, raised and fired his, and that he acted entirely in his self-defense.

In view of this conflict in the evidence, it is the province of the jury, under our practice, to settle such matters, and we are unable, as stated, to agree with the contention of appellant that their decision against appellant is without support in the evidence.

Finding no error in the record, the judgment of the trial court is affirmed.

*Affirmed.*

ON REHEARING.

January 14, 1920.

LATTIMORE, JUDGE.—Appellant presents to this Court an able and exhaustive motion for rehearing.

The first contention in said motion, is that we were mistaken in holding that the trial court did not commit error in failing and refusing to give in his charge to the jury, Articles 1105 and 1106, of Vernon's Penal Code. Looking over our opinion, we find nothing therein referring to said articles, nor do we find anything relative to the failure of the trial court to charge said articles, in any exception made by the appellant to the charge of the trial court, or in any requested instruction. Appellant requested but two special charges, both of which were given; and the only exception to the court's charge, which by any process of induction, remotely touches said articles referred to, is the exception to paragraph 14 of said charge, which paragraph we reproduced in our opinion, the exceptions to same being as follows:

"Defendant excepts to paragraph XIV of the Court's main charge, which is as follows:

" 'You are charged that if you believe from the evidence that at the time Otto Smith, the deceased, was shot by Ray Anderson, if he was so shot, that Will Smith made an attack upon Ray Anderson and F. W. Anderson, or was about to make an attack upon the said Ray Anderson and F. W. Anderson, or either Ray Anderson or F. W. Anderson, with a gun capable of producing death or serious bodily injury, then in that event the law presumes that Will Smith intended to Kill Ray Anderson or F. W. Anderson, or both.'

"For the reason that the court limits the rights of the defendant, Ray Anderson, to shoot and kill only upon an unlawful attack made by Will Smith, when the law would give him the right to act in defense of himself or his father, F. W. Anderson, whether the attack made by Will Smith was lawful or unlawful, if it reasonably appeared to the defendant at the time that his life or the life of his father, F. W. Anderson, was in danger or the defendant or his father was in danger of serious bodily injury, and because said law as given in said paragraph does not apply to the facts of this case.

"Defendant further excepts to paragraph XIV of the Court's main charge because it limits the presumption of the law to an attack made by Will Smith with a gun capable of producing death or serious bodily injury upon the defendant or his co-defendant, also does not instruct the jury that if they have a reasonable doubt thereof they should find the defendant not guilty. In other words, it does not instruct the jury what their verdict should be if they found the facts therein set forth to be true."

A careful reading of the above shows that the first reason assigned for the alleged error in said charge, is that the same should have given to appellant the right to act in defense of himself or his father, whether the attack of Will Smith was lawful or unlawful, if it reasonably appeared to appellant that his life, or the life of his father, was in danger, or that there was danger to either of serious

bodily injury; and the second reason assigned, is that said charge limits the presumption of the law to an attack by Will Smith with a gun capable of producing death or serious bodily injury.

In our opinion, we quoted paragraph 13 of the charge, which explicitly tells the jury that if Will Smith shot at appellant or his father; or raised a gun as if to shoot at either of them; or shot the car in which appellant and his father were at the time, and this action, or any other act of said Smith, viewed from the standpoint of the defendant or his father, created in the mind of appellant a reasonable expectation, or fear of death, or serious bodily injury to himself or his father, and acting thereon, he shot and killed the deceased, he would not be guilty, and we are unable to see how the court could have more clearly met the points made in the first of said excepting paragraphs above set out.    As    stated in our original opinion, the court gave to the jury pointed instructions to acquit appellant if Will Smith even raised the gun, whether such raising was lawful or unlawful, and whether said gun was loaded or unloaded, a deadly weapon, or not a deadly weapon.  Multiplication of instructions which do not add to the rights, or make clearer the defense of one accused, is useless, and can but confuse the issues.  Appellant testified that Will Smith raised the gun and shot, and struck the car in which he, appellant, and his father were, and that defending himself against such action, he shot and killed deceased.

As to the second reason assigned in said quoted exception to paragraph 14, we observe that the language of the court's charge, in paragraph 14, is substantially that of Article 1106, Vernon's Penal Code, in so far as the same applies to the facts of this case.   There was no sort of claim by appellant, and no such possible conclusion deducible from any of the evidence, that Smith contemplated maiming, disfiguring, or castration.  The only possible conclusion from the evidence and appellant's testimony, was that Smith intended either murder or serious bodily injury.  So concluding, the trial court, in paragraph 14, charged, as set out in our original opinion, that if Smith made, or was about to make an attack on appellant or his father, with a gun, capable of inflicting death or serious bodily injury, then the law presumes that he intended to kill or inflict serious bodily injury upon one or both of said parties.  The language of Article 1106 is, that if the weapon used is such as would have been calculated to inflict murder, etc., it is to be presumed that the person using it intended to inflict the injury.  We are unable to appreciate any difference in the language of said article and that of the charge in the instant case, and believe that the use of the word "capable," as used in the charge and applied to the weapon used, rather than the word "calculated," which is used in the statute, is the use of a stronger word, and one more favorable to appellant.  It is clear that

if the gun used was not capable of inflicting death or serious bodily injury, it could not be calculated to effect that object.

In our original opinion we held the court's charge in paragraph 16, to be a correct statement of the law. Said paragraph is set out in said opinion, to which reference is here made. The fact that after the difficulty between the parties, originating over the division of the feedstuff, the parties met a time or two, and exhibited animosity towards each other, changes neither the fact of what caused said difference nor the law applicable thereto; and regarding the attack made on this part of our opinion, in the motion for rehearing, we need only affirm that there was but one difference shown to exist between the parties, and that it arose out of the division of the feed crop, and was correctly referred to in the court's charge; but we further observe that where the trial court gave to appellant a charge on his right of self-defense, as was done in this case, unlimited by any charge on provoking the difficulty, or other theory of imperfect self-defense, a charge on appellant's right to go armed to the place where he met the deceased, is unnecessary. See Branch's Ann. Penal Code, Section 1150; Crippen v. State, 80 Texas Crim. Rep., 293, 189 S. W. Rep., 496; Williams v. State, 83 Texas Crim. Rep., 26, 201 S. W. Rep., 189.

The record in this case shows that appellant had a shotgun at the time of the homicide, and was in a public road. He met the deceased and his companions in front of a neighbor's house, and had not gone there to see them and seek a reconciliation or demand an explanation. It is so well known to every citizen that any man has an absolute right to carry a shotgun in a public road, that it would hardly seem necessary to tell them so when on the jury, but in this case the trial court not only gave to appellant his unlimited right of self-defense, but also told the jury that appellant had the right to be where he was, armed.

We have given this case our full and careful consideration, and are unable to see any point wherein appellant was not given, in every sense, a fair and impartial trial. The charge is an exceptionally full and comprehensive presentation of the law as applicable to the facts. Every special charge asked was given. For the killing of a man, as shown by the State's testimony, who was seated in a buggy, by the roadside, talking to a neighbor, unaware of whom was in the approaching automobile until just before the fatal shot was fired, the jury might have inflicted a graver penalty, but for their consideration of mercy, or the efforts of the able attorneys representing the appellant.

Being unable to agree with the contention made in said motion, the same is hereby overruled.

*Overruled.*