Rudy VALADEZ, Appellant,

v.

The STATE of Texas, Appellee.

No. 37308.

Court of Criminal Appeals of Texas.

Dec. 2, 1964.

Rehearing Denied Jan. 13, 1965.

Gib Callaway, Frederick G. Harmon, Brownwood, for appellant.

Leon B. Douglas, State's Atty., Austin, for the State.

DICE, Commissioner.

The conviction is for murder with malice; the punishment, twenty-five years in the penitentiary.

Trial was in the 35th Judicial District Court, of Coleman County, upon an in-

dictment returned into said court, in Brown County, by a duly impaneled grand jury in that county.

The evidence was undisputed that appellant killed the deceased, Adolfo Romero, by shooting him with a pistol, the homicide occurring in the city of Brownwood at the home of Pete Romero, Sr., where a group had gathered on the night in question and were playing records, dancing, and drinking beer.

The facts, as reflected by the state's evidence, show that during the festivities, Alvin Valadez, who was appellant's cousin, got "out of hand" and Pete Romero, Sr., asked him to leave. A scuffle between them ensued. In the scuffle Pete pushed Alvin out through the door. Alvin came back inside and the two then engaged in a fight. During the fight, the deceased, Adolfo Romero, appeared upon the scene and assisted Pete in again pushing Alvin out of the house. Some fifteen minutes later, Alvin returned to the house with the appellant and Joe Perez. As they appeared in the doorway leading into a bedroom, the appellant, who had a .22 calibre pistol in his hand, asked what happened. When Pete, Sr., replied: "What do you think happened?," appellant shot him in the right side of the neck. Appellant then turned the gun on Pete Romero, Jr., who was getting up from a bed, and shot him in the thigh. Pete, Jr., then proceeded to cut at appellant and his companions with a knife and just as they knocked Pete down the deceased walked by and the appellant shot him in the chest. The shot proved to be fatal.

Testifying as a witness in his own behalf, appellant admitted going to the Romero residence on the night in question with his cousins, Alvin Valadez and Joe Perez, and firing the two shots which struck the two Romeros and the fatal shot which killed the deceased. Appellant stated that he shot Romero, Sr., when the latter pointed a .22 calibre rifle at him and that he shot Romero, Jr., when he was attacking him (appellant) with a knife. In describing his shooting of the deceased, appellant testified: that when Pete Romero, Jr., attacked him, the deceased attacked Alvin and Joe; that after shooting the Romeros he, appellant, ran out of the room; that "I remember Alvin and Joe were in there, and I could hear lot of noise going on." Appellant stated that he then reloaded his pistol and ran back. When he returned he saw Alvin and Adolfo fighting. Adolfo had a knife, "like a kitchen knife" in his hand, "swinging at Alvin * * * Cutting him * * * and I tried to stop him, and I shot him."

The witness Joe Perez and Alvin Valadez corroborated appellant's testimony with reference to the attack being made upon Alvin by the deceased, with a knife. Alvin, in his testimony, referred to the knife as a "dagger" and Joe Perez described the knife as a butcher knife with a blade "about 8 inches long." Alvin testified that Adolfo stabbed him "over the heart" and was still cutting him when "[He] saw him fall."

The court, in his charge, instructed the jury upon the right of appellant to defend Alvin Valadez against an unlawful attack being made upon him by the deceased, from which attack it reasonably appeared to appellant that Alvin was in danger of death or serious bodily injury at the hands of the deceased.

Appellant duly presented to the court a requested charge which would have instructed the jury with reference to the statutory presumption, arising under Art. 1223, Vernon's Ann.P.C., from use of a deadly weapon by the deceased. Such requested instruction was refused and no instruction was given by the court with reference to the statutory presumption.

In failing to give an instruction under this article, the court erred.

Art. 1223, supra, provides:

"When the homicide takes place to prevent murder, maiming, disfiguring

or castration, if the weapon or means used by the party attempting or committing such murder, maiming, disfiguring or castration are such as would have been calculated to produce that result, it is to be presumed that the person so using them designed to inflict the injury."

In 4 Branch's Ann.P.C.2d, Sec. 2097, at page 412, under Art. 1223, supra, is found the following statements and citations:

"Where the testimony raises the issue as to whether defendant was acting in defense of another who was being or about to be assaulted by deceased with a deadly weapon, it is reversible error to fail to charge that if deceased was attempting to commit or was committing an assault on such other person and the weapon used was a deadly weapon, then the law presumes that he intended to kill and murder such other, and in such case defendant would have the right to slay at once to prevent such murder. Kendall v. State, 8 App [569] 583; Cline v. State, 28 SW 684; Paderes v State, 45 SW 914; Borden v State, 42 Crim [648] 652, 62 SW 1064; Yardley v State, 50 Crim [644] 647, 100 SW 399 (deceased shot first); Deneaner v State, 58 Crim 624, 127 SW 201; Castle v State, 84 Crim 593, 209 SW 416; Anderson v State, 86 Crim 207, 217 SW 390; Hurst v State, 151 Crim 615, 210 SW2d 594; Woods v. State, 152 Crim 525, 215 SW2d 334; Threadgill v State, 156 Crim 157, 239 SW2d 813; Sims v State, 156 Crim 608, 245 SW2d 260; Torres v State, 158 Crim 224, 254 SW2d 398 (pistol)."

In the instant case the evidence shows that the knife and the manner in which it was used by the deceased in making the attack upon Alvin Valadez was a deadly weapon and the court should have given application in his charge to the provisions of Art. 1223, supra, with reference to the statutory presumption arising from its use.

The failure to so charge was calculated to injure appellant and calls for a reversal of the conviction.

For the reason stated, the judgment is reversed and the cause is remanded.

Opinion approved by the Court.